Fred G. JENSEN, James J. Monahan, Walter C. Clark, and Richard F. Kriegler, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

SIPCO, INC. and Monfort, Inc., Defendants.

No. C 89–4068.

United States District Court, N.D. Iowa, Western Division.

Aug. 6, 1993.

---

James C. Hanks, Steven C. Kohl and Percy L. Nymann, Sioux City, IA, for plaintiff.

Richard J. Barry, Spencer, IA, William H. Bruckner, Houston, TX, Roger J. Miller and Randal M. Limbeck, Omaha, NE, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

DONALD E. O'BRIEN, Senior District Judge.

This matter comes before the court following a trial to the bench. Four retirees filed a class action under the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. § 1001, *et seq.* (ERISA), against two corporate defendants. The four plaintiffs, retirees, seek unchanged lifetime medical benefits they claim the class was promised.

This case revolves around a single issue: Does ERISA permit an employer to revise summary plan descriptions for welfare plans by adding reservation-of-rights language so as to conform summary plan description language with plan document language? After considering relevant case law, the briefs of the parties, the witnesses' testimony, and other relevant evidence, the court finds that an employer is permitted to do so under ERISA; however, an employer may not change benefits to those class members who

have already retired, relying on the language found in their Summary Plan Description at the time of their retirement.

### FINDINGS OF FACT[1]

1. This action was filed on July 21, 1989, under the ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits due, to enforce rights, and to clarify rights to present and future benefits under the terms of an employee welfare benefit plan.

2. This court has jurisdiction pursuant to 29 U.S.C. § 1132(e).

3. Venue for this action is proper in the Northern District of Iowa.

4. A copy of the complaint herein has been served on the Secretary of Labor and the Secretary of the Treasury pursuant to 29 U.S.C. § 1132(b).

5. Pursuant to this court's Order of December 11, 1989, this action is certified as a class action under Federal Rule of Civil Procedure 23(b)(2).

6. Pursuant to this court's class certification order, the class represented by named plaintiffs Fred G. Jensen, James J. Monahan, Walter C. Clark, and Richard F. Kriegler is certified as consisting of all retired salaried employees of SIPCO, Inc., formerly known as Swift Independent Packing Company, who retired on or before March 1, 1989 and their eligible dependents.

7. The class contains approximately 800 people.

8. Named plaintiffs are retirees who worked as salaried employees at several of defendant SIPCO, Inc.'s plants, offices, and other locations.

9. SIPCO is also known as Swift Independent Packing Company. A reference to one name is a reference to the other name.

10. Plaintiff Fred G. Jensen is a resident of Weld County, Colorado. Mr. Jensen was employed by defendant SIPCO, Inc. for approximately 39 years until his July 1, 1987 retirement. Jensen was controller of the Glenwood, Iowa plant at the time of its August 1, 1985 closing, and worked at several

---

1. Findings of Facts numbered 1 through 40 were stipulated to in the pretrial order.

other SIPCO plants, including the Sioux City, Iowa plant.

11. Plaintiff James J. Monahan is a resident of Marshall County, Iowa. Mr. Monahan was employed by SIPCO and its predecessors for over 36 years. At the time of his retirement in early 1989, he was controller of SIPCO's Marshalltown, Iowa plant.

12. Plaintiff Walter Clark is a resident of Polk County, Iowa. Mr. Clark was employed by SIPCO and its predecessors for 40 years. Just prior to the time of his retirement, Mr. Clark was controller of SIPCO's Des Moines, Iowa plant.

13. Plaintiff Richard F. Kriegler is a resident of Sioux City, Woodbury County, Iowa. Mr. Kriegler was employed by SIPCO for 33 years until his retirement in September of 1985. At the time of his retirement, he was employed as the plant superintendent at SIPCO's Sioux City, Iowa plant. Mr. Kriegler resides within the Northern District of Iowa.

14. At all times relevant to this action, defendants have done business within the state of Iowa. The United States District Court for the Northern District of Iowa has jurisdiction of the subject matter and the parties.

15. Prior to the filing of the Complaint herein, defendant SIPCO established the Swift Independent Packing Company (now known as SIPCO) Medical Plan for Salaried Pensioners. Currently such benefits are provided through three plans:

1) "SIPCO, Inc. Medical Plan—Plan 1006"—for salaried pensioners retiring on or after January 1, 1979 (Plan 1006).

2) "SIPCO, Inc. Medical Plan—Plan 1017"—for salaried pensioners retiring on or after January 1, 1987 (Plan 1017).

3. "SIPCO, Inc. Medical Plan—Plan 1018"—for salaried pensioners retiring on or after January 1, 1989 (Plan 1018).

16. Defendant SIPCO has created and currently maintains a trust, the Swift Independent Packing Company Medical Benefit for Pensioners Trust, to fund medical benefit plans for both non-salaried and salaried retirees.

17. Class members are persons presently receiving pension and other retirement benefits, including health insurance benefits under either Plan 1016, Plan 1017, or Plan 1018 (the Plans). As such, plaintiff class members are "participants" and "beneficiaries" under the Plans within the meaning of 29 U.S.C. §§ 1002(7) and 1002(8). The health insurance benefits which are the subject of this lawsuit and provided for in Plans 1006, 1017, and 1018 are provided pursuant to an "Employee Benefit Plan" within the meaning of ERISA, 29 U.S.C. §§ 1002(1) and 1002(3).

18. Defendant SIPCO, Inc. (SIPCO) is an employer within the meaning of 29 U.S.C. § 1002(5) of ERISA and operated a meat-packing plant within the Northern District of Iowa at pertinent times involved herein.

19. Defendant Monfort, Inc. (Monfort) is an employer within the meaning of 29 U.S.C. § 1002(5) of ERISA and operated a meat-packing plant within the Northern District of Iowa at pertinent times involved herein.

20. Defendant SIPCO is a "sponsor" and "administrator" and "fiduciary" of the three plans at issue pursuant to 29 U.S.C. §§ 1002(16) and 1002(21)(A).

21. Defendant Monfort is a "sponsor" and "administrator" and "fiduciary" of the three plans at issue pursuant to 29 U.S.C. §§ 1002(16) and 1002(21)(A).

22. In an August 10, 1988 letter, Ken Monfort, an employee and representative of both defendants, announced that the SIPCO retiree health care plan would be abolished for those salaried employees who did not retire prior to February 27, 1989. This date was later changed to March 1, 1989 in a November 21, 1988 memorandum. *See* Stipulated Facts, Pretrial Order ¶ I.T.

23. Prior to January of 1989, none of the Summary Plan Descriptions ("SPD") for the three plans at issue contained any reservation of any right to terminate, discontinue, alter, modify, or change the plans.

24. Prior to January of 1989, the SPDs contained the following language dealing with termination of coverage:

## TERMINATION OF COVERAGE

Children Who Marry or Reach Age 19—

All coverage for children ceases on date of marriage or age 19, whichever occurs first.

Divorce of a Spouse—

All coverage for the spouse ceases on the date of the divorce.

Death of a Pensioner—

Coverage for dependents continues for a period of 90 days following date of death and then ceases.

No other language regarding the right to terminate, discontinue, alter, modify, or change the Plans appeared in those SPDs.

25. Around January 1989, plaintiff class members who were receiving health care benefits pursuant to Plans 1006 and 1017 received new SPDs for both plans. Among other changes, for the first time the following language appeared on page 1 of the new SPDs for both plans:

SIPCO, Inc. reserves the right to terminate, discontinue, alter, modify, or change this Plan or any provision of this Plan at any time.

26. The new SPDs for Plans 1006 and 1017 also added language stating that when provisions of the SPD conflict with those of the Plan and Trust documents, the Plan and Trust documents are controlling.

27. Along with a letter dated April 21, 1989, plaintiff class members who had retired on or after January 1, 1989 and their eligible dependents received a new SPD concerning an entirely new plan entitled "SIPCO, Inc. Medical Plan—Plan 1018" (Plan 1018). This new SPD also contained the "right to terminate or modify" and "plan controls" language first appearing in the new 1989 versions of the SPDs issued for Plans 1006 and 1017.

28. The SPD Plan 1017 also contained benefit changes when compared with the SPD for Plan 1017 in effect prior to January 1, 1989.

29. Prior to May 11, 1990, SIPCO had advised those persons who became surviving spouses of retirees that they had health benefits for their lifetime or until their remarriage. During that week, the fact that such letters were being sent out came to the attention of defendants' counsel. Thereafter, the sending of such letters was terminated, and new letters were sent to approximately 50 surviving spouses. These new letters did not advise the surviving spouse that the previous letters they had received were in error with regard to the continuation or duration of their health benefits.[2]

30. In April 1981, Swift Independent Corporation, also known as SIPCO, Inc., was spun off from Esmark, Inc. when approximately 65% of SIPCO's shares were sold to the public.

31. After SIPCO, Inc. was formed, it established Plan 1006 for its salaried retirees. Plan 1006 was the same plan that Esmark had in effect for salaried retirees of Swift & Company. On April 1, 1981, the date of the spin-off of SIPCO from Esmark, Esmark established a trust to fund salaried pensioners accrued health care liabilities under Plan 1006. On August 12, 1981, SIPCO established Swift Independent Packing Company Medical Benefit for Salaried Pensioners Trust.

32. On January 1, 1984, Plan 1017 for certain salaried employees became effective.

33. On or about May 1987, ConAgra, Inc. acquired Monfort, Inc.

34. On September 28, 1987, ConAgra, Inc. acquired a 50% interest in SIPCO, Inc.

35. On or about February 1, 1988, the headquarters of SIPCO, Inc. was moved from Dallas, Texas to Greeley, Colorado. Since February 1, 1988, Monfort, Inc. has rendered management services for SIPCO, Inc. and leased office space to SIPCO, Inc.

36. At all times material after September 28, 1987, Monfort, Inc.'s operations were part of the ConAgra Red Meat Companies. Until August 1, 1989, Kenneth Monfort was president of this operating division. He was suc-

---

**2.** These letters to widows further demonstrate the extent of the "promises" made by the defendants.

ceeded by the current president, Richard Monfort.

37. At all times material after September 28, 1987, SIPCO, Inc.'s operations were part of the ConAgra Red Meat Companies. Until August 1, 1989, Kenneth Monfort was president of this operating division. He was succeeded by the current president, Richard Monfort.

38. Certain persons who are officers of Monfort, Inc. have been SIPCO, Inc. officers since on or after September 28, 1987.

39. In August 1988, ConAgra, Inc. acquired the remaining 50% of the stock of SIPCO, Inc.

40. Since September 28, 1987, ConAgra, Inc. and Monfort, Inc. have provided administrative services to SIPCO, Inc. in connection with the administration of its pension plans and related pensioner medical plans.

41. In an August 10, 1988 letter, as an inducement for some of the current class members to retire, defendants announced that the SIPCO Retiree Health Care Plan for Salaried Employees would be abolished for those employees who did not retire prior to February 27, 1989. Several class members, as a result of that inducement, did in fact retire in reliance on that letter. Class members were promised that if they selected the joint and survivor annuity, their spouses would also have benefits for life. Retirees relied on those promises and those promises were confirmed in writing by over 50 letters in evidence (Oral testimony of all class members and Plaintiffs' Exhibits 129 through 179). Many of these employees would not have retired ahead of the deadline if they knew it could be changed later.

42. Defendant Monfort has exercised and continues to exercise management control of SIPCO and of the three SIPCO Plans at issue herein.

Numerous oral promises were made to the class members that upon retirement, they would be entitled to medical and hospital benefits for life that would not be changed. For example, John Copeland, President, C.E.O., and Chairman of the Board of Swift from 1981 to 1986, testified as a member of the class and stated that our practice was to tell new employees that they and their spouses were covered for life and that that helped us recruit good people.

Our policy was, we would not change the benefits. As CEO I said and felt that we (the company) could not change or cancel the medical for retirees. When Esmark took over, I was there and our policy was the same. The medical could be changed before they retired, but not after. While I was there, I ordered any such proposed changes dropped. Our employees relied on this position.

Fred Jensen, a member of the class, testified that he was comptroller and that part of his duties included instructing retirees at "exit" interviews. "I conducted about 70 such interviews and told the retirees that both they and their spouses had lifetime medical coverage not subject to change."

Walter Clark, a named class representative, supported all of the above set out statements of Copeland and Jensen and said, "exhibit 7 is the booklet I had when I retired. I selected to have my wife covered. I took a 17% reduction in pension. I want the plan I retired on back." There is no question his pension was for life. It is clear his medical benefits also were for life.

The court did not consider the testimony of class members Al Stuart and Roy Schafer because they clearly violated the sequestration of witnesses order.

### CONCLUSIONS OF LAW

The primary method by which an employer communicates to its employees in regard to a welfare plan is through Summary Plan Descriptions (SPDs). *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988).

The contents of a SPD and the language used to communicate the contents are carefully prescribed by regulation. 29 C.F.R. § 2520.102–3(*l*).

The SPD must contain a description of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b).

The SPD "must not have the effect of misleading, misinforming or failing to inform

participants and beneficiaries" with respect to pertinent divisions of the plan. 29 C.F.R. § 2520.102–2(b).

■ If the SPD does not contain a benefit forfeiture clause, then such a forfeiture will not be enforced against a participant. *Hillis v. Waukesha Title Co., Inc.,* 576 F.Supp. 1103, 1109 (E.D.Wis.1983); *Eardman v. Bethlehem Steel Corp.,* 607 F.Supp. 196, 209–214 (W.D.N.Y.1984).

■ If there is a conflict between the Plan documents and the SPD, "the summary plan shall govern." *Edwards v. State Farm Mutual Automobile Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988); *McKnight v. Southern Life & Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985); *Bower v. Bunker Hill Co.,* 725 F.2d 1221, 1224–25 (9th Cir.1984).

## I. EQUITABLE ESTOPPEL.

One of the claims of the plaintiffs is that of equitable estoppel. The elements of equitable estoppel are:

> To establish estoppel, the party asserting estoppel must show: (1) a misrepresentation or concealment of material facts by the other party, (2) lack of knowledge of the true facts by the party to whom the misrepresentation is made, (3) an intent to cause reliance on the misrepresentation, and (4) actual reliance on the misrepresentation to the detriment of the party to whom the representation is made.

*International Harvester Credit Corp. v. Leaders,* 818 F.2d 655 (8th Cir.1987).

Under this claim plaintiffs assert that the representations set forth in the exhibits establish their right to a fixed level of benefits pursuant to a theory of equitable estoppel. Plaintiffs argue that the evidence shows that defendants' representations induced plaintiffs to believe that welfare benefits would be unchanged and would remain unchanged in retirement. The plaintiffs claim that these representations were such that defendants expected or should have expected that they would induce action or forbearance by plaintiffs. In reliance on those promises, plaintiffs provided services for defendants, then retired and did not look for other employment.

Defendants argue that no promise of lifetime benefits or benefits vested upon retirement. Therefore, the defendants argue that the key ingredient of promise is missing in the estoppel claim. Defendants further argue that ERISA does not recognize a claim for estoppel.

As the law of ERISA emerges, one fact remains constant, parties in ERISA suits will continue to dispute which common law claims have been preempted and those which have not. As Chief Judge Waters notes in *Fitch v. Arkansas Blue Cross and Blue Shield,* 795 F.Supp. 904, 906 (W.D.Ark.1992), "in recent years the issue of whether state law principles of estoppel apply to an ERISA governed employee benefit plan has been the subject of numerous reported decisions". After a careful and through review of the case law Judge Water concludes that an estoppel claim would be recognized by the Eighth Circuit Court of Appeals in some circumstances. In reaching his decision Chief Judge Water states:

> It has also been noted that the language contained in 29 U.S.C. section 1132(a)(3) allowing a participant or beneficiary to bring a civil action to "obtain other appropriate equitable relief" evidences Congress's intent that federal courts fashion federal common law. *Law v. Ernst & Young,* 956 F.2d 364, 369 (1st Cir.1992) (*citing, Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 156, 105 S.Ct. 3085, 3097, 87 L.Ed.2d 96 (1985) (Brennan, J. concurring in judgment)). Additionally, a line of case law exists that imposes liability upon reliance on misstatements or errors in the summary plan description, even when the misstatements conflict with the plan itself. *See e.g. Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134 (6th Cir.1988).

*Fitch* at 906–07.

Serious doubts have been expressed over the extension of plan eligibility through estoppel and the courts have placed various limitations on the use of these principals. *Fitch* at 907. One of the main reasons for this apprehension is the desire to protect the actuarial soundness of benefit plans. This

concern is not as much a factor in the case at bar since the benefit plans here are self insured as well as supplemented by a trust set up by previous owners of the companies. (Findings of Fact No. 16 and 31). The defendants admit there is some 6 to 8 million dollars in said trust. Sipco indicated these funds are "in reserve" available to retirees for medical care. The defendants want no further responsibility after those funds run out.

The Court of Appeals for the Eleventh Circuit has held that claimants cannot succeed on estoppel arguments based on oral modifications of employee benefit plans. *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir. 1986). However, courts are allowed to fashion a common law equitable estoppel in cases involving oral interpretations of ambiguities in such plans. *Kane v. Aetna Life Insurance*, 893 F.2d 1283, 1285–86 (11th Cir.1990), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1991); *See also Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 820–23 (9th Cir.1992).

■ The elements of federal common law equitable estoppel are: (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably relied on the misrepresentation. *National Companies Health Benefit Plan v. St. Joseph's Hospital*, 929 F.2d 1558, 1572 (11th Cir.1991). *See also Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984).

■ After a review of the above listed factors the court finds that all factors are present. First, Monfort and SIPCO did fail to include the reservation of rights in the SPDs. These actions resulted in a misrepresentation of material facts. Second, Monfort and SIPCO were aware of the true facts because they put the "magic words" in the underlying plan documents. Third, Monfort and SIPCO intended that the misrepresenta-

tion be acted upon or had reason to believe the retirees here would rely on the misrepresentation as evidenced by Ken Monfort's letter set out in Finding of Fact No. 41. Fourth, under ERISA an SPD must contain any termination or modification language. SIPCO Plans 1006, 1017, and 1018 as originally written were silent in this regard. Fifth, as a matter of law, plaintiffs were unaware of the right to terminate, amend, or modify the plan because the SPDs were silent as to this reservation of right.

In *Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 984 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 357 (1993) the court found that ERISA sets forth the relevant requirements for a proper summary plan description in the following terms:

**Section 1022. Plan description and summary plan description**

(a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries * * * The summary plan description shall include the information described in section (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan * * *

 * * * * * *

(b) The plan description and summary plan description shall contain the following information: * * * circumstances which may result in disqualification, ineligibility, or denial or loss of benefits * * *

29 U.S.C. section 1022(a)(1), (b) (1975). Pursuant to 29 U.S.C. section 1135, the Secretary of Labor is empowered to prescribe necessary regulations and forms. Pursuant to that power, regulations promulgated by the Secretary state that:

(a) Method of presentation. The summary plan description shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their

rights and obligations under the plan. In fulfilling these requirements, the plan administrator shall exercise considered judgment and discretion by taking into account such factors as the level of comprehension and education of typical participants in the plan and the complexity of the terms of the plan. Consideration of these factors will usually require the limitation or elimination of technical jargon and of long, complex sentences, the use of clarifying examples and illustrations, the use of clear cross-references and a table of contents.

(b) General format. The format of the summary plan description must not have the effect of misleading, misinforming, or failing to inform participants and beneficiaries. Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure, or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations. The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description, the page on which the restrictions are described is noted.

29 C.F.R. § 2520.102–2(a), (b) (1988).

In these plans—SIPCO, Inc. Medical Plan—Plan 1006, Plan 1017, and Plan 1018—the restrictions were not minimized; they were nonexistent (not mentioned).

While a plan's summary may be easily understood, it does not fully comply with ERISA if it is not an accurate interpretation of the original pension plan. *McKnight v. Southern Life and Health Ins. Co.* 758 F.2d 1566, 1570 (11th Cir.1985). It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document and then claim that any inconsistencies will be governed by the voluminous and complex plan. Unfairness will flow to employee for reasonably relying on the summary booklet. *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988) (quoting *McKnight v. Southern Life and Health Ins. Co.* 758 F.2d 1566, 1570 (11th Cir.1985)). *See also Hansen v. Continental Insurance Co.,* 940 F.2d 971, 982 (5th Cir.1991); *Pierce v. Security Trust,* 979 F.2d 23 (4th Cir.1992); *Govoni v. Bricklayers, Masons & Plasterers,* 732 F.2d 250, 252 (1st Cir.1984) (reliance or prejudice from faulty plan summary is ground for relief); *Bower v. Bunker Hill Co.,* 725 F.2d 1221, 1224–25 (9th Cir.1984) (misleading summary plan description, combined with misleading management representations, preclude summary judgment in favor of employer); *Hoefel v. Atlas Tack Corp.,* 581 F.2d 1, 3 (1st Cir.1978) (enforcing summary of retirement plan) *cert. denied,* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); *Genter v. Acme Scale and Supply Co.,* 776 F.2d 1180, 1185 (3d Cir.1985) (the summary plan description must not mislead, misinform or fail to inform participant and beneficiaries of the plan); *Hurd v. Hutnik,* 419 F.Supp. 630, 656–57 (D.N.J.1976) (despite disclaimer, summary plan statement governs).

■ Under ERISA, an employer must provide a summary plan description to participants which describes circumstances which may result in disqualification, ineligibility, or denial or loss of benefits, written in understandable form, which is sufficiently accurate and comprehensive to reasonably apprise participants and beneficiaries of their rights and obligations under the plan. *Arnold v. Arrow Transp. Co. of Delaware,* 926 F.2d 782 (9th Cir.1990). Employees are entitled to rely on descriptions contained in summary benefits plan descriptions required by ERISA. Poor drafting of summary benefit plan description (as required by ERISA) may extend or enlarge coverage which would otherwise be unavailable. *Branch v. G. Bernd Co.,* 764 F.Supp. 1527, 1538 (M.D.Ga. 1991).

There are other specific obligations placed on the employer by the Act. One of these obligations relates to the notification that

must be afforded the plan participants of their rights under the plan. Congress felt that ERISA's predecessor legislation had failed to provide adequate notification of rights for the plan participants. The Senate report on the Act identified as a source of congressional concern the inadequacy of effective notice of the rights of the plan participants due to the technicalities and complexities of the predecessor's Act's language—language which was all too often misleading or incomprehensible. For expressions of these concerns in House and Senate reports, see H.R.Rep. No. 807, 93d Cong., 2d Sess. 60 (1974), reprinted in 1974 U.S.C.C.An. 4639, 4620, and S.Rep. No. 383, 93d Cong., 2d Sess. 18 (1975), reprinted in 1974 U.S.C.C.An. 4639, 4890, 4935. *Pierce v. Security Trust,* 979 F.2d 23 (1992), (4th Cir.1992).

 The law is clear, if plan administrators fail to accurately represent the terms of an ERISA plan in an SPD, the undisclosed provisions are ineffective. The Code of Federal Regulations could not make this point clearer: "Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations." 29 C.F.R. § 2520.102–2(b) (1988); *McKnight,* 758 F.2d at 1570; *Edwards,* 851 F.2d at 136. This court is persuaded, as set out in Findings of Fact ¶¶ 22, 23, 24, and 25, that Ken Monfort announced that he was going to abolish the retiree health care plan for those employees that did not retire despite the fact that none of the plans contained any reservation of right to terminate or alter the plans, and despite the fact that all the SPDs stated that the plans were good until the death of a pensioner, and that it was not until January of 1989 that the new SPDs contained the words SIPCO, Inc. reserves the right to terminate or change the plans. This just cannot be done to retirees who retired relying on the language of earlier SPDs.

Having found plaintiffs' claim for recovery meritorious under this theory of equitable estoppel, the court does not now need to address plaintiffs' claims under promissory estoppel.

## II. FIDUCIARY DUTY.
### A. Who Are Fiduciaries?

An "employer" is defined as any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employees acting for an employer in such capacity. 29 U.S.C. § 1002(5). Under that definition, both Monfort and SIPCO are employers.

A "fiduciary" is defined as:

A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Every plan must have at least one named fiduciary who has authority to control and manage the operation and administration of the plan. 29 U.S.C. § 1102(a)(1). In addition, under ERISA:

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The term "fiduciary" should be broadly construed to effectuate the remedial purposes of ERISA. *See, e.g., Donovan v. Mercer,* 747 F.2d 304, 308–09 (5th Cir.1984). The statutory definition "includes persons who have authority and responsibility with re-

spect to the matter in question, regardless of their formal title." *Id.* at 308 (quoting H.R.Rep. No. 1280, 93rd Cong., 2d Sess., *reprinted in* 1974 *U.S.Code Cong. & Ad. News* 4639, 5038, 5103). The test is a functional one. *See, e.g., Blatt v. Marshall and Lassman,* 812 F.2d 810, 812 (2d Cir.1987). "[F]iduciary status exists with respect to any activity enumerated in the statute over which the entity exercises discretion or control." *Id.*

■ Employers who sponsor the plan, the directors, officers or shareholders thereof, and plan administrators are among those parties who may be ERISA fiduciaries with respect to a plan, where they possess sufficient authority or control over the investment of plan assets or the administration of the plan. *See* R. Cooke, *ERISA Practice & Procedure* § 6.02 (1989 and 1991 Supp.); *United States Steel Corp. v. Commonwealth of Pa. Human Relations Comm'n,* 669 F.2d 124, 126–28 (3d Cir.1982) (employer is fiduciary when it was authority to alter terms of plan and authority to administer plan); *McNeese v. Health Plan Marketing, Inc.,* 647 F.Supp. 981, 983–85 (N.D.Ala.1986) (plan administrator who exercises discretionary control over administration of plan is fiduciary as to matters within its control).

■ A person is a fiduciary, however, only to the extent the person is engaged in functions which confer fiduciary status, i.e., when administrating the plan or investing its assets. *Hickman v. Tosco Corp.,* 840 F.2d 564, 566 (8th Cir.1988). Thus, an employer that is also an ERISA fiduciary is free to make its business decisions for business reasons, without regard to the collateral effect those decisions might have on contingent employee benefits. *Id.; Adams v. LTV Steel Mining Co.,* 936 F.2d 368, 370 (8th Cir.1991).

The Eighth Circuit has held that an employer may properly act in a dual capacity as both a plan fiduciary and an employer. *Hickman v. Tosco Corp.,* 840 F.2d 564, 566 (8th Cir.1988) (citations omitted). Consequently, if the employer acts only as an employer, ERISA's fiduciary standards do not come into play. The statute has never prohibited an employer from acting in accordance with its non-fiduciary business inter-

ests when it is not acting to administer a plan or to invest plan assets. *Id.* Furthermore, ERISA has never required routine corporate business transactions, which may collaterally affect unaccrued and unvested employee benefits, to be performed solely in the interest of plan participants. *Sutton v. Weirton Steel Div. of National Steel Corp.,* 567 F.Supp. 1184, 1200–01 (N.D.W.Va.1983), *aff'd,* 724 F.2d 406, 411 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

**B. Breach of Fiduciary Duty: What Are Fiduciaries' Duties?**

■ Another of the plaintiffs' claims is an alleged breach of fiduciary duty by the defendants. To recover on a claim for breach of fiduciary duty arising out of defendants' conduct with respect to a plan, plaintiffs are required to prove by a preponderance of the evidence:

(1) Defendants were fiduciaries with respect to the plan of which plaintiffs were participants or beneficiaries.

(2) Defendants breached their fiduciary duties.

(3) Plaintiffs' damages from the breach of the fiduciary duties.

*See McNeese v. Health Plan Marketing, Inc.,* 647 F.Supp. 981, 983–87 (N.D.Ala.1986).

An ERISA fiduciary's duties are statutorily prescribed:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large

losses, unless under the circumstances it is clearly prudent and to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

29 U.S.C. § 1104(a)(1).

■ Misrepresentations or omissions of pertinent information in a fiduciary's communication with participants and beneficiaries regarding plan administration are breaches of the fiduciary duties recognized by ERISA. *Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir.1983). "Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1)." *Id.*

■ Although business decisions made by a fiduciary in a capacity other than its capacity as fiduciary cannot themselves be a breach of fiduciary duty, such a fiduciary must make no material misrepresentations regarding administration of the plan in connection with its business decisions. *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1162–64 (6th Cir.1988); *Payonk v. HMW Industries, Inc.*, 883 F.2d 221, 225–26 (3d Cir.1989) (*Berlin* prohibits affirmative misrepresentations about rights under a plan affected by employer's business decisions).

■ A fiduciary's failure to act or pay benefits in accordance with plan documents is a breach of fiduciary duty. 29 U.S.C. § 1104(a)(1)(D). A fiduciary's failure to effectuate proper disclosure of the terms of the plan in the SPD is a breach of fiduciary duty. *See Genter v. Acme Scale & Supply Co.*, 776 F.2d 1180, 1183–86 (3d Cir.1985). A fiduciary's failure to notify participants and beneficiaries of a plan's financial problems, where they are apparent to the fiduciary, is a breach of fiduciary duty. *See, e.g., McNeese v. Health Plan Marketing, Inc.*, 647 F.Supp. 981, 985–86 (N.D.Ala.1986) (failure to notify participants of employer's delinquent contributions to pension fund); *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust*, 650 F.Supp. 359, 377 (N.D.Ga.1986) (same).

■ In administering a plan, a fiduciary may not favor one group of plan participants over another. *Winpisinger v. Aurora Corp. of Ill., Precision Castings Div.*, 456 F.Supp. 559, 566 (N.D.Ohio 1978). Individual participants and beneficiaries may not invoke 29 U.S.C. § 1109, through its civil enforcement provision, 29 U.S.C. § 1132(a)(2), as a basis to recover damages they suffered as a result of a breach of fiduciary duty. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985). This portion of ERISA only allows participants and beneficiaries, on behalf of the plan, to recover damages suffered by the plan; the recovery inures to the plan.

■ The court concludes that ERISA provides for a cause of action by individual participants and beneficiaries who are victims of an ERISA fiduciary's breach of fiduciary duty. *See Bartucca v. Katy Industries, Inc.*, 668 F.Supp. 111, 112–13 (D.Conn.1987). Recognition of such a cause of action is compelled by the plain language of 29 U.S.C. § 1132(a)(3), which authorizes an individual participant or beneficiary to bring a civil action "to enjoin *any act or practice* which violates *any provision* of this title or the terms of the plan, or ... *to obtain other equitable relief ... to redress such violations.*" 29 U.S.C. § 1132(a)(3) (emphasis added). Violation of § 1104 is an act which violates ERISA, and the remedy allowed in § 1132(a)(3) is in addition to the remedy allowed in § 1132(a)(2). A participant or beneficiary should not be required to prove damage to the plan in order to obtain relief to redress violations of ERISA.

The court notes that the Eighth Circuit Court of Appeals approved a damage award to a class of individual participants and beneficiaries for plan fiduciaries' breach of duty in *Monson v. Century Mfg. Co.*, 739 F.2d 1293 (8th Cir.1984). In addition, at least one federal district court has allowed an individual participant or beneficiary to sue a plan fiduciary for damages sustained by the participant or beneficiary as a result of a breach of fiduciary duty under 29 U.S.C. § 1104. *See St. Mary Medical Center v. Cristiano*, 724

F.Supp. 732, 740 (C.D.Cal.1989) (assignee of participant's rights).

Therefore, plaintiffs are able as individual beneficiaries to bring a declaratory judgment action to have this court determine their rights under ERISA and these plans. Applying these standards to the present case, the court concludes based on the findings of fact that Monfort was a fiduciary with respect to the SIPCO Plan. SIPCO was the administrator of the Plan and exercised discretionary authority and control with respect to every aspect of the management and administration of the Plan. Monfort was a fiduciary with respect to SIPCO's Plan because Monfort at all times controlled SIPCO.

■ A retiree medical benefit such as Plans 1006, 1017, and 1018 are welfare benefits under ERISA's definition. 29 U.S.C. § 1002(1). The court finds that welfare benefits are not vested under ERISA. Therefore, the court concludes that unlike pension benefits, Plans 1006, 1017, and 1018 are not subject to ERISA's mandatory vesting provisions. *See Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1516 (8th Cir. 1988), *cert. denied*, 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989); *Anderson v. John Morrell & Co.*, 830 F.2d 872, 876 (8th Cir.1987). Further, the Eighth Circuit does not recognize even an inference of an intent to vest such benefits. *Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d at 1517. The court therefore holds that the plaintiffs here must bear the burden of demonstrating that welfare benefits are of a lifetime duration.

The only way welfare benefits can "vest" is by agreement or contract between the parties. *In re White Farm Equipment Co.*, 788 F.2d 1186, 1193 (6th Cir.1986).

■ After reviewing the evidence and considering the parties' testimony, the court concludes as a matter of law that SIPCO did agree to provide lifetime unchanged benefits to the plaintiffs' class (retirees). In reaching its conclusion, the court first reviewed the language of documents establishing Plans 1006, 1017, and 1018 as well as the SIPCO Trust document. After reviewing the underlying documents, the court concludes that the

language in each of the underlying Master Plan documents expressly reserves SIPCO's right to amend or terminate each Plan. However, as noted above, the SPDs did not contain such language as was required by the Code of Federal Regulations. The court finds that SIPCO, if it was its intention to alter or terminate future medical benefits, could have easily informed the employees in its SPD as required by law. As noted above, as SIPCO did not expressly inform plaintiffs of its intentions as found in the underlying trust document, the court finds that it was SIPCO's intention at pertinent times to provide each of plaintiffs' class members with lifetime benefits.

The court also reviewed the SPDs for Plans 1006, 1017, and 1018. It finds that no reservation of rights was contained in any of the SPDs prior to January 1989. The defendants presented exhaustive evidence that each SPD set forth procedures that enabled participants of the Plan to inspect or obtain a copy of the underlying Plan document, which did reserve SIPCO's right to terminate. The defendants presented further evidence indicating that no member of the class ever requested a copy of the Plan document for Plans 1006 or the combined document for Plans 1006 and 1017 prior to the start of this litigation. The court finds this evidence to be irrelevant, as the Code of Federal Regulations (29 C.F.R. § 2520.102–2(a), (b) (1988)) specifically provides for SPDs to contain accurate representations of the underlying Plan in language understandable to every Plan participant and, as such, the court has no problem finding that an available review of the underlying Plan documents should not bar retirees in any way so as to affect this litigation.

■ The court concludes that defendants breached their fiduciary duties to plaintiffs by failing to properly disclose the terms of the Plan in the summary plan descriptions SIPCO, Inc. Medical Plan—Plan 1006; SIPCO, Inc. Medical Plan—Plan 1017; and SIPCO, Inc. Medical Plan—Plan 1018, including in particular the failure to disclose the claimed reservation of a right to amend or terminate as set forth in Article XVI.

The plaintiffs and class members are therefore entitled to a declaratory judgment and injunctive relief under 29 U.S.C. § 1132(a)(3) giving them unchanged lifetime medical benefits as promised prior to their retirement.

### ORDER

The plaintiffs have prevailed on two of their theories, equitable estoppel and breach of fiduciary duty. Therefore,

**IT IS HEREBY ORDERED THAT:**

1. Defendants be permanently enjoined from terminating benefits or instituting any reduction in the benefits provided under SIPCO, Inc. Medical Plan—Plan 1006 ("Plan 1006") and are further enjoined to permanently restore the health care benefits under said plan to the level of benefits provided to plaintiffs and class members as specified in the summary plan description for said plan issued in April 1981.

2. Defendants be permanently enjoined from terminating the benefits or instituting any reduction in the benefits provided under SIPCO, Inc. Medical Plan—Plan 1017 ("Plan 1017") and are further enjoined to permanently restore the health care benefits under said plan to the level of benefits provided to plaintiffs and class members as specified in the summary plan description for said plan issued in January 1984.

3. Defendants be enjoined to permanently provide health care benefits to those plaintiffs and class members who are receiving benefits under SIPCO, Inc. Medical Plan—Plan 1018 ("Plan 1018") which are identical to the health care benefits provided to the participants in Plan 1017 as specified in the summary plan description for Plan 1017 issued in January 1984.

4. Defendants be enjoined to issue summary plan descriptions for Plans 1006 and 1017 to all plan participants which delete therefrom the following language which appeared on page 1 of the summary plan description issued in January 1989:

> SIPCO, Inc. reserves the right to terminate, discontinue, alter, modify, or change this Plan or any provision of this Plan at any time.

5. Defendants be enjoined to issue summary plan descriptions to plaintiffs and class members who are receiving benefits under Plan 1018 which are identical to the summary plan descriptions issued to participants in Plan 1017 in January 1984.

6. A declaratory judgment be entered obligating the defendants to provide the plaintiff class for the duration of all class members' lives with all benefits of the SIPCO Medical Plan for Salaried Pensioners described in the summary plan description as set forth in paragraphs 1–3 above.

7. The defendants' motion to dismiss is denied.

8. Counsel for the plaintiffs and class members shall make proper application for reasonable attorney fees, costs of prosecuting this action, court costs, and all other relief deemed necessary pursuant to 29 U.S.C. § 1132(g).