HOPE CENTER, INC., Plaintiff,

v.

WELL AMERICA GROUP, INC., Geoffrey A. Cole, Sr., John M. Kennedy, and Sponsored Marketing Insurance Administrators, Inc., Defendants.

No. 01–815–CIV.

United States District Court, S.D. Florida.

March 18, 2002.

Laura Keats Wendell, Donald John Hayden, Eric Saida, Baker & McKenzie, Miami, FL, for Plaintiff.

Steven J. Chackman, Bernstein & Chackman, P.A., Hollywood, FL, David Michael McDonald, John W. McLuskey, McLuskey, McDonald & Payne, Miami, FL, Russell Scott Buhite, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, FL, Richard Joseph Suarez, Hardeman & Suarez, P.A., Miami, FL, for Defendant.

### *ORDER DENYING DEFENDANT SPONSORED MARKETING INSURANCE ADMINISTRATORS MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT*

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant Sponsored Marketing Insurance Administrators Inc.'s Motion for Summary Judgment and Plaintiff's Cross–

Motion for Summary Judgment, each filed February 11, 2002.

THE COURT has considered the motions, the pertinent portions of the record, and is otherwise fully advised in the premises.

Plaintiff filed its six count Amended Complaint on April 20, 2001, alleging misconduct relating to the provision of health insurance benefits to its employees. Counts I and II against Defendants Well American Group ("WAG") and Geoffrey A. Cole, Sr., respectively, previously have been disposed of by this Court. Count III charges Defendant Sponsored Marketing Insurance Administrators Inc. ("SMA") with breach of fiduciary duty, and self-dealing, pursuant to 29 U.S.C. § 1109. Counts IV through VI charge Defendant John M. Kennedy with negligence, negligent misrepresentation, and fraud in the inducement, respectively. The instant motions only address Count III.

For the following reasons the Court holds in favor of Plaintiff and against Defendant finding Defendant breached its fiduciary duty owed to the Plan. *See* 29 U.S.C. § 1109.

### FACTS

On or about April 1, 1999 Plaintiff entered into a Plan Management Agreement (the "Plan" or "PMA") with Defendant WAG. *See* Plaintiff's Statement of Facts ("Plaintiff's Statement") ¶ 3; Defendant SMA's Statement of Facts ("Defendant's Statement") ¶ 5. Thereafter, WAG entered into an agreement with SMA to serve as a third-party administrator of the Plan. *See* Defendant's Statement ¶ 10. Under the terms of the Plan, Plaintiff is identified as the Plan Sponsor, WAG as the "Named Fiduciary" and "Plan Administrator," and SMA as the "Contract Administrator." *See* Defendant's Statement ¶ 7.

According to the agreement, "SMA received claims for medical services provided to Well America plan participants, determined whether the services billed were an eligible benefit, determined the amount payable under the fee schedule, less any co-payments or deductibles, and printed a check to pay the provider." Defendant's Statement ¶ 11; *see also* Plaintiff's Statement ¶ 7. Thus, pursuant to the Plan, Plaintiff made monthly payments to SMA, in satisfaction of its invoices, for medical services rendered to the Plan participants (*e.g.* Plaintiff's employees and their families). *See* Plaintiff's Statement ¶ 6; Defendant's Statement ¶ 9. SMA then deposited these monies in a premium trust account. *See* Plaintiff's Statement ¶ 14; Defendant's Statement ¶ 12. After deducting certain fees and expenses, SMA transferred the balance to WAG which would pay the claims. Plaintiff's Statement ¶ 15–16; Defendant's Statement ¶ 12.

In June or July of 1999, Plaintiff's employees discovered claimants were not being paid according to the Plan. *See* Plaintiff's Statement ¶ 8; Defendant's Statement ¶ 13. Moreover, as of February, 2000, SMA also acknowledged that WAG had failed to pay certain claims. Plaintiff's Statement ¶ 13; *see also* Burcher Dep., Ex. 5.

SMA additionally maintained a fiduciary claims account which it used to pay claims. *See* Plaintiff's Statement ¶ 18; Defendant's Statement ¶ 14. In April of 2000, two months after learning that WAG had failed to pay claims, SMA began transferring Plaintiff's contributions directly from the premium account to the claims account; effectively bypassing WAG. *See* Plaintiff's Statement ¶ 23; Defendant's Statement ¶ 14. This arrangement was maintained until expiration of the Plan in June of 2000. *See* Plaintiff's Statement ¶ 23; Defendant's Statement ¶ 14. However, while SMA withheld $13,054.23 from WAG between April and June, it nevertheless transferred

$9,903.46 to WAG over the same period. *See* Plaintiff's Statement ¶ 23. SMA maintains these were the fees due WAG under the Plan electing to continue to allocate them for that purpose. *See* Defendant's Response at 2; Burcher Dep. at 50–52.

In June of 2000, Plaintiff learned from SMA that there were outstanding claims totaling $216,639.89. *See* Burcher Dep. at 74. Accordingly, Plaintiff now sues alleging SMA has breached its fiduciary duty to the Plan in violation of 29 U.S.C. § 1109.

### LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The *Adickes* Court explained that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See Adickes,* 398 U.S. at 157, 90 S.Ct. 1598; *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997) (citing *Adickes* ).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the Court should deny summary judgment. *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## LEGAL ANALYSIS

### I. Plaintiff's Standing

The parties first dispute whether Plaintiff has standing to sue under ERISA. "The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined the right to enter federal court was necessary to further the statute's purpose." *Gulf Life Insurance Co. v. Arnold,* 809 F.2d 1520, 1523 (11th Cir.1987) (quoting *Franchise Tax Board v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 21, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983)). These "certain parties" are delineated within the statute's standing provision, 29 U.S.C. § 1132(a). In particular, sections 1132(a)(2) and (a)(3) permit a fiduciary to sue for appropriate relief.[1] *Id.* In the instant case, Plaintiff asserts it has standing to bring this action as a fiduciary under the Plan. *See* Plaintiff's Motion at 8.

> Under ERISA,
>
> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, . . . or (iii) he has discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Further, the statute "provides that an ERISA 'fiduciary' may include not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." *Hughes Supply, Inc. v. Robey–Barber Insurance Services, Inc.,* 2000 WL 782954 at *4 (M.D.Fla. June 5, 2000). *See* 29 U.S.C. §§ 1102(a), 1002(21)(A). *See also Mertens v. Hewitt Assoc.,* 508 U.S. 248, 251, 113 S.Ct. 2063, 2066, 124 L.Ed.2d 161 (1993). Thus, a court must "look at a party's conduct to determine what particular actions constitute binding discretionary authority for purposes of 29 U.S.C. § 1002(21)(a)." *Id.*

In the instant case, SMA contends that "[i]f an employer has effectively delegated its fiduciary responsibilities and concomitant liabilities to another entity, then it cannot invoke its nominal fiduciary status to assert a right to sue under ERISA." Defendant's Motion at 9 (quoting *Eureka Paper Box Co. v. WBMA, Inc. Voluntary Employee Benefit Trust,* 767 F.Supp. 642, 649–50 (M.D.Pa.1991)). Accordingly, SMA argues Plaintiff delegated all of its authority to WAG upon entering into the Plan, thereby absolving itself of any fiduciary duties. *See id.* at 9.

However, Plaintiff details various types of conduct in support of its claim that it is a Plan fiduciary. First, Plaintiff claims it exercised its fiduciary duty in engaging WAG. *See* Plaintiff's Motion at 9. Second, in permitting WAG to thereafter appoint SMA as a third-party administrator. *See id.* Third, in its right to terminate the Plan for cause. *See id.* at 10. Fourth, because it was "responsible for providing employees with forms and information about the Plan." *See id.* (quoting PMA ¶ 3.C). Fifth, by "actively assisting em-

---

1. The pertinent portion of 29 U.S.C. § 1132 reads as follows:

A civil action may be brought-

. . . . .

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

ployees who were experiencing problems" with their coverage under the Plan. *See id.* at 11. Sixth, because it maintained a file of all unpaid claims and called complaining providers on behalf of Plan beneficiaries. *See id.* Seventh, by virtue of its efforts on behalf of beneficiaries to obtain "claims itemizations from the providers" and forward[ them] to WAG for processing. *See id.* And, finally, in terminating the Plan upon learning that WAG was under investigation by the State of Florida. *See id.* Accordingly, the Court finds, as a matter of law, that the above referenced conduct collectively demonstrates that Plaintiff "exercise[d] discretionary control or· authority over the plan's management, administration, or assets" so as to characterize it as a fiduciary permitting it to sue under §§ 1132(a)(2) and (3). *Hughes Supply, Inc.*, 2000 WL 782954, at *4; *see also* 29 U.S.C. § 1002(21)(A).

## II. Defendant's Role as a Fiduciary under the Plan

■ The parties next contest whether SMA was a fiduciary under the Plan. Plaintiff contends SMA was a fiduciary because it controlled plan assets. *See* Plaintiff's Motion at 9. In support of its argument, Plaintiff relies on § 1002(21)(A) which states that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any authority or control respecting management or disposition of assets." 29 U.S.C. § 1002(21)(A). Importantly, SMA does not contest its characterization as a fiduciary instead suggesting its fiduciary role is limited "to the extent it had control over plan assets." Defendant's Response at 6 (citing *Klosterman v. Western General Management, Inc.*, 32 F.3d 1119, 1122 (7th Cir.1994)).

However, both the Plan and SMA's own Statement of Facts suggest that it had fiduciary responsibilities beyond the mere distribution of assets. Specifically, under the Plan, SMA's duties included, "collec-

tion and distribution of plan funds, adjudication and payment of claims." PMA ¶ 2.H; *see also* Defendant's Statement ¶ 6. Accordingly, pursuant to these responsibilities as a third-party administrator of the Plan, SMA had certain discretionary authority under the Plan equivalent to that of a claims administrator. *See Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347 (11th Cir.1998). Consequently, its liability as a fiduciary encompasses its administrative and managerial responsibilities as well as its role in the distribution of assets.

## III. Damage to the Plan

Under ERISA, a fiduciary cannot sue for benefits. *See* 29 U.S.C. § 1132(a)(1). However, a fiduciary may sue "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 imposes liability for breach of a fiduciary duty stating:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109.

■ A fiduciary may breach its duties under a plan by its "failure to act or pay benefits in accordance with plan documents." *Jensen v. SIPCO, Inc.*, 867 F.Supp. 1384, 1396 (N.D.Iowa 1993); *see also* 29 U.S.C. § 1104(a)(1)(D). Moreover, a "fiduciary's failure to notify participants and beneficiaries of a plan's financial prob-

lems, where they are apparent to the fiduciary, is a breach of fiduciary duty." *Id.* *See, e.g., McNeese v. Health Plan Marketing, Inc.,* 647 F.Supp. 981, 985–86 (N.D.Ala.1986) (failure to notify participants of employer's delinquent contributions to pension fund); *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust,* 650 F.Supp. 359, 377 (N.D.Ga.1986) (same).

■ Thus, contrary to SMA's representation, Plaintiff is not suing "to recover unpaid benefits." Defendant's Motion at 10. Rather, Plaintiff alleges SMA's failure to pay benefits, and its allocation of Plan assets for other purposes, constitute a breach of its fiduciary duty to the Plan as defined in § 1109. *See* 29 U.S.C. § 1109. Specifically, Plaintiff contends the "failure of SMA as fiduciaries of the Plan to utilize the Plan assets to pay provider claims constitutes a clear and unequivocal breach of their fiduciary duties to the Plan." Plaintiff's Response at 19. Additionally, while SMA first became aware of WAG's difficulties as early as February 2, 2000, it did not "notify participants and beneficiaries of the Plan's financial problems" until June 28, 2000. *Jensen,* 867 F.Supp. at 1396. *See* Response at 19; Burcher Dep., Ex. 5; Defendant's Statement ¶ 19. Accordingly, Plaintiff is properly suing pursuant to its role as a fiduciary under § 1132(a)(2), alleging SMA breached its fiduciary duty with respect to § 1109.

■ Finally, having determined SMA breached its fiduciary duty to the Plan, the Court must ascertain the extent of damage caused by the breach. "A fair contextual reading of [§ 1109] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."[2] *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985). Accordingly, "[t]he principal statutory duties imposed on the trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 142–43, 105 S.Ct. 3085, 87 L.Ed.2d 96. Thus, the Supreme Court has noted that:

> Consistent with this objective, [§ 1132(a)(2) ], the enforcement provision for[§ 1109], authorizes suits by four classes of party-plaintiffs: the Secretary of Labor, participants, beneficiaries, and fiduciaries. Inclusion of the Secretary of Labor is indicative of Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole. Indeed, the common interest shared by all four classes is in the *financial integrity of the plan.*

*Id.* at 142 n. 9, 105 S.Ct. 3085 (emphasis added).

In the instant case, the financial integrity of the Plan is in jeopardy as a result of the $216,639.89 in outstanding claims.[3] *See* Burcher Dep. at 32. This amount is not due as a consequence of damages sustained by beneficiaries stemming from actions by the administrators of the Plan. *See* Defendant's Motion at 14; *compare*

---

**2.** The bracket alterations incorporate the statutory provisions as currently enumerated in Title 29 of the United States Code, replacing the original numbering scheme contained in the Employee Retirement Income Security Act of 1974. *See* 29 U.S.C. § 1001, *et seq.*

**3.** As SMA has indicated, the Plan may be liable for this amount. In fact, in a letter dated August 30, 2000, SMA inquired as to whether Plaintiff would pay the outstanding claims and takes issue with Plaintiff's refusal to do so. *See* Defendant's Statement ¶ 20–22.

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.,* 102 F.3d 712 (4th Cir.1996) (wherein the court held an employer could not sue under §§ 1109 and 1132(a)(2) to recover benefits due under a plan). Rather, the damages are based in contract emanating from SMA's breach of its fiduciary duty to the Plan. *See Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. at 144, 105 S.Ct. 3085 (finding injury to the plan under § 1109 limits relief to an award of contractual damages).

Specifically, SMA breached its fiduciary duty by failing to pay benefits due under the Plan, failing to timely notify participants and beneficiaries of the Plan's financial problems, and deciding to use Plan assets to pay WAG rather than satisfy claims due under the Plan. *See Jensen v. SIPCO, Inc.,* 867 F.Supp. 1384, 1396 (N.D.Iowa 1993); *see also* 29 U.S.C. § 1104(a)(1)(D). *See, e.g., McNeese,* 647 F.Supp. at 985–86; *Chambers,* 650 F.Supp. at 377. Consequently, because SMA failed to properly manage and administer Plan assets, in breach of its fiduciary duty, it caused damage to the Plan and is liable for "any losses to the plan resulting from each such breach." [4] *See* 29 U.S.C. § 1109. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiff SHALL file with this Court affidavits and other documentation in support of the total losses to the Plan resulting from Defendant's breach, minus any monies received from third parties in satisfaction of their contractual obligations owed to the Plan.

---

[4]. This amount must be reduced by any damages paid by WAG to Plaintiff pursuant to this Court's finding in favor of Plaintiff in its Order of February 5, 2002. In that Order the Court awarded Final Judgment to Plaintiff Hope Center, Inc., against Defendant Well America Group, Inc., in the amount $191,742.00. It would be inequitable to permit Plaintiff to recover more than its contractual damages due under the Plan, nor is there any provision in the statute to allow extra contractual or punitive damages. *See Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. at 141 n. 12, 105 S.Ct. 3085 ("In light of this holding, we do not reach any question concerning the extent to which [§ 1109] may authorize recovery of extra contractual compensatory or punitive damages from a fiduciary by a *plan.*") (emphasis in original).