**VESCOM CORPORATION, Plaintiff**

v.

**AMERICAN HEARTLAND HEALTH ADMINISTRATORS, INC., Defendant and Third Party Plaintiff**

and

**Merrion Reinsurance Company, Ltd., Defendant**

v.

**Rodney Murphy and Murphy & Associates, Inc., Third Party Defendants**

No. Civ. 01–146–B–S.

United States District Court, D. Maine.

Feb. 22, 2003.

Charles E. Gilbert, III, Julie D. Farr, Gilbert & Greif, P.A., Bangor, ME, for Vescom Corporation, plaintiff.

Thad B. Zmistowski, Eaton, Peabody, Bradford & Veague, Bangor, ME, John A. Claro, Ellis, Claro, Mee & Goodwin, LLP, Oklahoma City, OK, for American Heartland Health Administrators Inc, defendant.

Kevin M. Cuddy, Mark K. McDonough, Cuddy & Lanham, Bangor, ME, Jonathan Scharff, Harris, Shelton, Dunlap, Cobb & Ryder, Memphis, TN, for Rodney Murphy, Murphy & Associates, third-party defendants.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, District Judge.

The United States Magistrate Judge filed with the Court on January 17, 2003 her Recommended Decision. Plaintiff filed its objections to the Recommended Decision on January 30, 2003 and Defendant American Heartland filed its response to those objections on February 18, 2003. Defendant American Heartland filed its objections to the Recommended Decision on January 31, 2003 and Plaintiff filed its response to those objections on February 13, 2003. I have reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Magistrate's Judge's Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and determine that no further proceeding is necessary.

1. It is therefore *ORDERED* that the Recommended Decision of the Magistrate Judge is hereby *AFFIRMED.*

2. It is *ORDERED* that American Heartland's Motion for Summary Judgment is *DENIED* with respect to Vescom's ERISA claim, Count I, and its defamation claim, Count V; and *GRANTED* with respect to Vescom's remaining common law claims, Counts II,III,IV,VI and VII.

3. It is *ORDERED* that American Heartland's request that the case be referred for arbitration is *DENIED.*

4. It is further *ORDERED* that Rodney Murphy and Murphy & Associates, Inc.'s Motion for Summary Judgment is *GRANTED.*

## RECOMMENDED DECISION ON DEFENDANT AMERICAN HEARTLAND'S MOTION FOR SUMMARY JUDGMENT; THIRD PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND ORDER RE. RELATED MOTIONS

KRAVCHUK, United States Magistrate Judge.

Plaintiff Vescom Corporation sued Defendants American Heartland Health Administrators, Inc., and Merrion Reinsurance Company, Ltd., in connection with

the Defendants' administration and reinsurance of Vescom's self-funded employee health benefits plan. Vescom's claims against American Heartland Health Administrators[1] assert that American Heartland breached certain fiduciary duties in its role as plan administrator as well as various common law duties arising under both state and federal common law.[2] In response to these claims, American Heartland filed a third party complaint against Vescom's insurance agent, Murphy & Associates and its principal, Rodney Murphy, seeking indemnification or contribution for any damages that might arise for alleged misrepresentations regarding the risks and benefits of the plan.[3]

American Heartland now moves for summary judgment against all of Vescom's claims. Rodney Murphy and Murphy & Associates similarly move for summary judgment against American Heartland's third party claims. Coupled with these dispositive motions are various non-dispositive motions addressing the composition of the summary judgment record. I now RECOMMEND that summary judgment enter against all of Vescom's claims, except its ERISA claim (Count I) and its defamation claim (Count V). I further RECOMMEND that summary judgment enter against American Heartland's Third Party Complaint, in its entirety.

**Summary Judgment Material Facts**

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). This District has prescribed a specific local rule that governs the manner in which parties must present motions for summary judgment. *See* D. Me. Loc. R. 56.

In addition to the parties' Local Rule 56 summary judgment statements of material facts,[4] Vescom has filed four motions concerning the summary judgment record, two to strike certain witness statements given under the statutory alternative to the oath,[5] one for leave to file a surreply

---

1. Merrion Reinsurance Company is in default.

2. *Amended Complaint, Docket No. 8.*

3. *Third–Party Complaint, Docket No. 15.*

4. For the convenience of the parties, the following docket numbers correspond with the following summary judgment statements of material facts:

    Docket No. 29–American Heartland's "Statement of Undisputed Facts";

    Docket No. 39–Vescom's "Response" and "Statement of Additional Facts";

    Docket No. 44–American Heartland's "Reply to Plaintiff's Response ... and Statement of Additional Facts."

5. For example, Vescom moves to strike the Affidavit of American Heartland's CEO, submitted in support of American Heartland's motion for summary judgment, on the grounds that the Affidavit is unsworn, states that it is based in part on the affiant's "personal knowledge and belief, except as to those items identified as being based upon my information and belief," and because it draws certain legal conclusions. *Docket No. 41; see also Aff. of Jack H.M. Ferguson, Docket No. 30.* In fact, the "affidavit" is an unsworn statement given under penalty of perjury, which is an acceptable, statutory alternative to the oath. *See* 28 U.S.C. § 1746. To the extent that I have relied upon this document to support my findings of fact, I have done so only to the extent that any factual assertion would be a matter of Mr. Ferguson's personal knowledge in his role as American Heartland's CEO. Finally, with respect to American Heartland's concern over who should draw legal conclusions in this case, I can only say that the Court does not need to be reminded that it must draw the legal conclusions. This Motion to Strike, *Docket No. 41*, is **DENIED.**

memorandum and one to have its statement of additional material facts deemed admitted.[6] For its part, American Heartland has filed one non-dispositive motion to amend its summary judgment motion and supporting memorandum. American Heartland also filed a "corrected" reply statement of material facts, which contains some record citations not found in the original. This latter filing is not partnered, however, with either a motion to amend or a motion to extend the applicable filing deadline and I have restricted my review of American Heartland's two reply statements to the first such document only.

Although the two pending summary judgment motions each generate separate statements of material facts, my recommendation on American Heartland's motion for summary judgment will effectively dispose of the claims in the Third Party Complaint as well. Therefore, the following facts are drawn from the fact statements filed in connection with American Heartland's motion. Because none of the non-dispositive motions warrant extended comment, I dispose of them in footnotes 5 and 6, *supra*, and footnotes 12, 13 and 23, *infra*.

### Facts

Vescom Corporation ("Vescom") is a corporation with a principal place of business in Hampden, Maine. American Heartland Health Administrators, Inc. ("American Heartland") is a corporation with a princi-

pal place of business in Houston, Texas. Merrion Reinsurance Company, Ltd. ("Merrion") is a corporation with its principal place of business in Dublin, Ireland.[7] Rodney Murphy resides, and Murphy & Associates has its principal place of business in, Cordova, Tennessee. Mr. Murphy and his insurance agency will collectively be referred to herein as "Murphy."

In January 1998, Vescom employed Murphy as its insurance agent, and requested that Murphy help Vescom locate a suitable health insurance plan through which Vescom could provide its employees with health benefits. Murphy located American Heartland, which is in the business of providing administrative and fiduciary services for single-employer, self-funded employee benefit plans. *Docket No. 29,* ¶ 1. On February 6, 1998, Murphy faxed census data concerning Vescom's employees to Jack Ferguson, President and CEO of American Heartland, and requested a quote for a "co-pay plan." *Docket No. 29,* ¶ 5 & Ex. D; *Docket No. 39,* ¶ 5. In response, American Heartland presented Murphy with a proposal for a single employer, self-funded ERISA plan ("the American Heartland's Proposal"). Essentially, American Heartland proposed that Vescom self-fund its employees' healthcare benefits and explained that employer-funded healthcare plans are unlike traditional insurance, that American Heartland could serve as plan fiduciary and administrator and that reinsurance

---

**6.** Vescom moves to have the facts found in its opposing statement of material facts deemed admitted because most are not properly controverted in American Heartland's reply statement, *Docket No. 50.* Although Vescom correctly cites Local Rule 56(e) to the effect that properly supported statements of fact must be deemed admitted unless properly controverted, its admonition to the Court is entirely unnecessary and serves only to clutter the Court's docket. The Court understands fully how it should construe the record under the

Local Rules. Because the motion is entirely superfluous, it is **STRICKEN**. Should Vescom believe any of the within recommendations are in error and that said error stems from a violation of Local Rule 56(e), it can raise that issue by way of an objection to my recommendation.

**7.** The Clerk entered a default against Merrion on August 15, 2001. *Plaintiff's Request for Entry of Default and Supporting Affidavit, Docket No. 2.*

could be obtained to limit the risks involved with a self-funded plan American Heartland's Proposal also indicated that, should Vescom execute an administrative services agreement with it, American Heartland would "assist the Plan in securing quotes for reinsurance indemnity contracts to protect the Plan from losses incurred." *Docket No. 29,* ¶ 6 & Ex. E; *Docket No. 39,* ¶ 6. Included with American Heartland's Proposal was a Schedule of Contribution Rates, a sample Administrative Agreement, a sample Reinsurance Agreement and the proposed medical benefits for Vescom employees. *Docket No. 39,* ¶ 6. The Schedule of Contribution Rates indicated the estimated level of monthly contribution per employee, as determined by an independent underwriter,[8] which monthly contribution American Heartland represented "should be adequate to permit the program to pay all claims incurred, or to purchase any reinsurance, indemnity, or stop loss coverage for the program, if desired," but not including any portion of the employer's agreed liability, if any. The Schedule further indicated that the quoted rates would be guaranteed for a period of twelve months and would change only if a material change occurred in Vescom's employee census data. *Id.; see also Treadwell Depo. Ex. 1.* These materials were provided to Murphy, who then provided them to

Vescom. Vescom and American Heartland did not engage in any direct oral communications at this time. *Docket No. 29,* ¶ 7.

Vescom reviewed the Proposal and decided to self fund a health benefits plan of the kind proposed by American Heartland. Although the American Heartland Proposal indicated that varying levels of reinsurance could be selected, the quoted monthly contribution rates included 100% reinsurance through Merrion. Vescom selected this level of reinsurance and applied for reinsurance with Merrion, submitting the necessary papers through American Heartland. *Docket No. 29,* ¶ 8; *Docket No. 39,* ¶¶ 8, 33.[9] In April 1998, Vescom [10] entered into an Administrative Agreement with American Heartland. Pursuant to this Agreement, it was American Heartland's duty as Vescom's plan administrator to review all claims submitted in connection with the receipt of health care benefits by Vescom's employees, to adjudicate the claims and to submit the claims twice monthly to Merrion for payment. In exchange for these services, American Heartland received an administrative fee of 30% of the total monthly contribution paid by Vescom, reduced to 25% as of April 1999. *Docket No. 29,* Exs. L and M.

Vescom and Merrion first executed their Reinsurance Agreement in April 1998. *Docket No. 29,* Ex. G. In April 1999, at the

---

8. American Heartland retained the services of the underwriter. Vescom played no role in hiring the underwriter or in setting the rates for the Plan. *Docket No. 39,* ¶ 31.

9. The form reinsurance agreement was co-authored by American Heartland and Merrion. *Docket No. 39,* ¶ 32; *Deposition of Jack H.M. Ferguson,* pp. 89–91. The parties' statements reflect that they dispute who "designed" the Vescom Plan. I am not convinced that this disputed factual issue is material to the claims addressed herein. The related material issues appear more precisely to be (1) whether American Heartland's Proposal contained a misrepresentation of material fact,

such as a representation that misstated the nature of an employer's risks under a self-funded plan and (2) whether American Heartland breached a duty to Vescom by recommending the use of Merrion as reinsurer.

10. The record contains successive administrative contracts entered into by American Heartland and "Vescom Corporation" as "Plan Sponsor." *Docket No. 29,* Exs. L & M. There is no indication in the parties' statements of material fact that a legally independent entity such as "The Vescom Plan" exists separate and apart from Vescom the corporation.

expiration of the initial Agreement's one-year term, Vescom and Merrion executed a second Reinsurance Agreement. *Docket No. 29*, Ex. H. These agreements called for claims to be submitted twice monthly and provided that Merrion would fund properly submitted claims within three days of receipt. *Id.*, p. 5 (Article IX).

When a monthly contribution check arrived at American Heartland from Vescom, American Heartland would deposit the check in American Heartland's "contribution account." *Docket No. 39*, ¶ 48. In order to collect its monthly administrative fee, American Heartland would transfer a percentage of the funds from the contribution account to its "operating account." *Id.* ¶ 50. Using the fees collected in its operating account, American Heartland paid service fees to Murphy, the underwriter and other entities who provided services to American Heartland. *Id.*, ¶ 37. American Heartland considered the funds remaining in the contribution account to be Merrion's funds, because the funds represented reinsurance premium. *Docket No. 44*, ¶ 13. American Heartland would either transfer these remaining funds to Merrion by wire or, when Merrion directed that it do so, transfer funds to American Heartland's "claims account" to pay those claims indicated by Merrion. *Docket No. 39*, ¶ 49. The funds contained in the contribution account were not earmarked or segregated to each employer in proportion to that employer's contribution, but were treated by American Heartland as a pool from which to pay any and all employers' claims. *Docket No. 39*, ¶ 54.

At the time of the execution of the first Vescom–Merrion Reinsurance Agreement in April 1998, American Heartland was aware that Merrion did not always fund claims within three days. After the execution of the Vescom Reinsurance Agreement, this pattern continued and became more severe. In fact, Merrion "almost never paid its reinsurance claims within the three (3) day time limit required by the contract." *Docket No. 29*, ¶ 17; *Docket No. 39*, ¶ 17. As of at least February 1999, American Heartland was also aware that Merrion was in default on all of its reinsurance agreements with employers whose self-funded plans were also administered by American Heartland and that *none* of these employers' January 1999 claims were funded in January 1999. *Docket No. 39*, ¶¶ 18, 43. As of February 15, 1999, American Heartland further knew that Merrion was $1 million behind in funding claims. *Docket No. 39*, ¶ 42. Nonetheless, American Heartland wire transferred $115,000 to Merrion on February 1, 1999 and $50,722 on February 11, 1999. *Docket No. 39*, ¶ 53. Furthermore, at no point between February 1999 and April 1999, the date Vescom renewed its Reinsurance Agreement with Merrion, did American Heartland inform Vescom of Merrion's general default or its $1 million backlog. Vescom only learned of Merrion's default in July 1999, when Merrion stopped funding any claims whatsoever. *Docket No. 29*, ¶ 18; *Docket No. 39*, ¶ 45. Had it been informed of Merrion's financial condition prior to April 1999, Vescom would not have renewed its contracts with either American Heartland or Merrion. *Docket No. 39*, ¶ 45.

Edwin W. Ehler, American Heartland's CFO, testified at his deposition that "it would be fair to say" that premiums Vescom paid between July 1999 and November 1999 were used, at Merrion's instruction, to pay claims submitted under other employers' plans. *Docket No. 39*, ¶ 55. However, Mr. Ehler has subsequently determined that although Vescom paid $59,769.00 in reinsurance premium in this timeframe, American Heartland paid Vescom claims valued at $60,609.77 during the same timeframe from its claims account. *Docket No. 44*, ¶ 14 & Ex. D.

When submitting claims to Merrion on behalf of Vescom, the Reinsurance Agreements indicated that American Heartland should present them "on a standard claim run form," which would furnish for each claim "the type of claim, the amount of each individual claim, and the date when said claim was incurred by the program." *Docket No. 39,* ¶ 36. At some point in time, American Heartland stopped providing Merrion with all of the information called for under the Vescom–Merrion Reinsurance Agreements. According to American Heartland, this was in accordance with Merrion's request. *Docket No. 44,* ¶ 7. According to the deposition testimony of Francois Verkaeren,[11] Merrion's director, Merrion repeatedly made requests of American Heartland to supplement the information it provided and Mr. Verkaeren spent two or more hours per week trying to get additional information from Mr. Ferguson by phone. *Docket No. 39,* ¶ 36.[12]

Ultimately, American Heartland located an alternative reinsurance provider and Vescom entered into a new reinsurance agreement with this reinsurer on November 1, 2000. *Docket No. 29,* ¶ 21; *Docket No. 39,* ¶ 21. As of that date, American Heartland had adjudicated as payable $73,854.38 in claims submitted by Vescom employees, which claims were subject to the Reinsurance Agreement but have never been funded by Merrion. *Docket No. 29,* ¶ 22. There is no basis in the record for finding that American Heartland would have had sufficient funds on hand to pay these claims had American Heartland allowed Vescom's premium payments to accrue in a segregated account.[13] However, at the time of Vescom's April 1999 renewal with both American Heartland and Merrion, American Heartland's underwriter recommended to American Heartland that Vescom's monthly contribution be increased by 78–100%. Instead of changing Vescom's monthly contribution, American

**11.** American Heartland opposes those Vescom statements relating to Mr. Verkaeren's deposition testimony with two statements made under penalty of perjury by Edwin W. Ehler, American Heartland's CFO. *Docket No. 51,* ¶ 36 & Exs. B & D. It his statements, Mr. Ehler declares that Mr. Verkaeren's testimony was false and perjurious. Although the summary judgment standard is such that the Court must credit Vescom's statements rather than American Heartland's, Vescom nevertheless moves to strike Mr. Ehler's statements from the record. *Mot. to Strike the Aff. of Edwin Ehler, Docket No. 48.* Because the summary judgment standard calls for Mr. Verkaeren's testimony to be credited at this juncture, this motion does nothing other than clutter the Court's docket. It is **DENIED** as moot.

**12.** American Heartland filed a motion for leave to amend its summary judgment filings "to include the complete records of all claims demands submitted to Merrion ... by [American Heartland] on behalf of ... Vescom." *Motion for Leave to Amend, Docket No. 43,* at 1. According to American Heartland, it declined to file such materials because of its

reliance on a representation by Vescom's counsel that Vescom would likely not pursue a claim based on American Heartland's processing of claims. *Id.* I have reviewed that portion of the record containing the representation and conclude that Vescom's counsel clearly did not make any such concession. As master of its own summary judgment motion, American Heartland should have anticipated that this issue would be contested and prepared its filings accordingly. Leave to amend at this juncture, particularly where no amended filings have yet been submitted, would unduly delay disposition of the pending motions and serve to negate the relative efficiency and orderliness that *Local Rule 56* otherwise affords for both the Court and the litigants. Finally, supplementation of the summary judgment record in this fashion would not be case dispositive in any event, because other genuine issues would still remain to support Vescom's ERISA claim. American Heartland's Motion for Leave to Amend is **DENIED**.

**13.** Nor does any summary judgment statement of fact expressly state that Vescom funded the $73,854.38 in excess claims.

Heartland made certain changes to the benefits provided under Vescom's plan, which provided at most a 44% credit. *Docket No. 39,* ¶ 46.

Although the administrative fees American Heartland charged Vescom were supposed to be 30% of the total monthly rate from April 1, 1998 to March 31, 1999 and 25% from April 1999 to the termination of the plan on December 31, 1999, American Heartland retained approximately 33% of the total monthly rate for November 1999 and 30% of the total monthly rate for December 1999. *Docket No. 39,* ¶ 60.

With respect to administration of the Vescom Plan, American Heartland has admitted that Vescom serves not only as the employer and plan sponsor, but also as a cofiduciary. *Amended Complaint, Docket No. 8,* ¶ 7; *Answer, Docket No. 10,* ¶ 7. I note this because Vescom must pursue its civil ERISA claim in its capacity as a plan fiduciary. 29 U.S.C. § 1132(a).

## Discussion

The following discussion addresses American Heartland's motion for summary judgment before turning to Murphy's motion for summary judgment.

1. *Sufficient facts exist to overcome American Heartland's motion for summary judgment against Vescom's ERISA fiduciary duty claim.*

■ Pursuant to ERISA's general fiduciary duty clause:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and … with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1). The specific statutory duties created in the text of ERISA are not meant to be exhaustive. Federal courts are expected to flesh out ERISA's general fiduciary duty provisions. *Barrs v. Lockheed Martin Corp.,* 287 F.3d 202, 207 (1st Cir.2002). ERISA provides civil remedies to both plans and beneficiaries for a fiduciary's breach of its duties. Among other liabilities, Section 1109(a) imposes the following liability on plan fiduciaries:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach. . . .

Vescom claims that American Heartland breached its fiduciary duties to the Vescom Plan in each of the following ways: (1) by failing to provide Merrion with sufficient information to process claims; (2) by setting the plan's monthly rates too low to cover claims and failing to provide Merrion with notice of the rates for the April 1999 renewal; (3) by charging excessive administrative fees and paying commissions to individuals who did not provide services to Vescom's plan; (4) by using premium funds paid by Vescom to fund claims for other employers' plans; and (5) by failing to disclose to Vescom its knowledge about Merrion's failure to properly fund claims prior to Vescom's renewal of its administrative and reinsurance contracts in April 1999. *Mem. of Law in Opp. to Def.'s Mot. Summ. J., "Docket No. 38,"* at 11.

■ American Heartland's motion for summary judgment against Count I should be denied because Vescom has produced sufficient evidence to create a genuine factual issue concerning its ERISA claim. Most significantly, Vescom has presented a genuine issue of material fact whether American Heartland breached its fiduciary duty to the Plan by not disclosing Mer-

rion's failure to fund $1 million worth of claims or Merrion's general default on all of its reinsured employers' January claims prior to the April renewal date for Vescom's Reinsurance Agreement. Given its unique knowledge of Merrion's performance and its fiduciary obligation to discharge its duties solely in the interest of Plan participants and beneficiaries, such an omission could be adjudged to fall short of American Heartland's fiduciary obligations. When a fiduciary has knowledge of a plan's financial problems, failure to notify participants and beneficiaries of such problems is a breach of fiduciary duty. *Hope Ctr., Inc. v. Well America Group, Inc.,* 196 F.Supp.2d 1243, 1250 (S.D.Fla.2002) (holding that defendant administrator "breached its fiduciary duty by failing to timely notify participants and beneficiaries of the Plan's financial problems"); *Jensen v. SIPCO, Inc.,* 867 F.Supp. 1384, 1396 (N.D.Iowa 1993), *aff'd,* 38 F.3d 945 (8th Cir.1994), *cert. denied,* 514 U.S. 1050, 115 S.Ct. 1428, 131 L.Ed.2d 310 (1995) ("[O]missions of pertinent information in a fiduciary's communication with participants and beneficiaries regarding plan administration are breaches of the fiduciary duties recognized by ERISA."); *McNeese v. Health Plan Marketing, Inc.,* 647 F.Supp. 981, 985–86 (N.D.Ala.1986) (failure to notify participants of employer's delinquent contributions to pension fund); *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust,* 650 F.Supp. 359, 377 (N.D.Ga.1986) (same); *cf. Batchelor v. Oak Hill Med. Group,* 870 F.2d 1446,

1449 (9th Cir.1989) (holding that the "imposition of a limited duty to safeguard employees' ERISA contributions intended for an ERISA plan, where a third party's control has placed those funds at risk, comports with Congress'[s] explicit intent 'that courts will interpret the prudent man rule and other fiduciary standards bearing in mind the special nature and purposes of employee benefit plans intended to be effectuated by the Act' ") (citing H.R.Rep. No. 533, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin. News 4639, 4650).

In addition to this theory, Vescom has presented genuine issues as to whether American Heartland breached a fiduciary duty by continuing to credit Merrion with Vescom funds despite its knowledge of Merrion's general default, *Hope Ctr.,* 196 F.Supp.2d at 1250 (finding breach of fiduciary duty where administrator used plan assets to pay contract administrator rather than satisfy claims), by failing to follow actuarial standards suggested by its underwriter when setting the monthly contribution rate in or about April 1999, and by charging excessive administrative fees in November 1999 and December 1999, which fees came out of plan funds.[14]

## 2. Vescom's Counts II, III and IV are conceded by Vescom, preempted by ERISA, or non-actionable for lack of sufficient evidentiary support.

American Heartland contends that Vescom's state common law causes of

---

**14.** Although I conclude that Vescom's ERISA claim should survive American Heartland's summary judgment motion, I remain concerned about what practical remedy the Court might afford it. The ERISA statutory claims are necessarily pursued in Vescom's fiduciary capacity and can only support a monetary award being made to the plan. 29 U.S.C. §§ 1132(a)(2)-(3) (prescribing ERISA remedies); *see also* 29 U.S.C. § 1109 (discussing "liability for breach of fiduciary duty"); *Mass.*

*Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ("[T]he entire text of § [1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself."). In the context of these facts, I am unsure of the impact of any monetary award on Vescom, the employer's, bottom line. Because, this is not an issue raised by the parties, I leave it at that.

action are preempted by ERISA because both Vescom and it are ERISA entities and any suit between them necessarily "relates to" the Vescom Plan. ERISA's pre-emption clause provides that ERISA's provisions and remedies "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). "The question whether a certain state action is pre-empted by federal law is one of congressional intent." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137–38, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). The purpose of ERISA's preemption provision is "to ensure that plans and plan sponsors [are] subject to a uniform body of benefits law." [15] *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The term "state law" is understood to encompass state law causes of action as well as statutory law. *Id.* at 658–59, 115 S.Ct. 1671; *see also* 29 U.S.C. § 1144(c)(1). Thus, in *Ingersoll–Rand,* the Supreme Court held that a state common law claim for wrongful-discharge-to-deny-pension-benefits [16] was preempted by ERISA where the plan at issue was an ERISA plan. 498 U.S. at 139–141, 111 S.Ct. 478. The Court reasoned that pre-emption was called for because "the existence of a pension plan [was] a critical factor in establishing liability under the [Texas] wrongful discharge law." *Id.* at 139–40, 111 S.Ct. 478. In fact, the state claim was only available in the pension context. *Id.* at 136, 111 S.Ct. 478. The Supreme Court considered it an easy case precisely because the state law cause of action was "specifically designed to affect employee benefit plans." *Id.* at 140, 111 S.Ct. 478 (quotation marks and citation omitted). The Supreme Court also reasoned that preemption was appropriate because the development of such common law causes was likely to "give rise to different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." *Id.* at 142, 111 S.Ct. 478. Subsequently, in *Travelers,* the Supreme Court referred to such claims generally as being preempted because they amounted to "alternative enforcement mechanisms" to ERISA's civil enforcement regime. *Travelers,* 514 U.S. at 658–59, 115 S.Ct. 1671; *see also Hampers v. W.R. Grace & Co.,* 202 F.3d 44, 51 (1st Cir.2000) (discussing *Travelers* ).

**15.** The Supreme Court elaborated as follows in *Ingersoll–Rand:*

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans. As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and "to completely secure the rights and expectations brought into being by this landmark reform legislation." S.Rep. No. 93–127, p. 36 (1973). Prominent among these safeguards are three provisions of particular relevance to this case: § 514(a), 29 U.S.C. § 1144(a), ERISA's broad pre-emption provision; § 510, 29 U.S.C. § 1140, which proscribes interference with rights protected by ERISA; and § 502(a), 29 U.S.C. § 1132(a), a "carefully integrated" civil enforcement scheme that is one of the essential tools for accomplishing the stated purposes of ERISA.
498 U.S. at 137, 111 S.Ct. 478 (quotation marks and citation omitted).

**16.** The Texas claim was specific to cases involving pension benefits and was recognized by the Texas Supreme Court on public policy grounds. It was not simply a "wrongful discharge" claim. *Ingersoll–Rand,* 498 U.S. at 136, 111 S.Ct. 478.

Since the *Ingersoll–Rand* opinion, the First Circuit has had several opportunities to apply ERISA preemption, albeit in the context of claims by beneficiaries. In *Vartanian v. Monsanto Co.*, 14 F.3d 697 (1st Cir.1994), the First Circuit Court of Appeals construed *Ingersoll–Rand* as holding that ERISA preempts the following two kinds of state causes of action: (1) "where a plaintiff, in order to prevail, must plead, and the court must find, that an ERISA plan exists"; and (2) where there is no express preemption, but the cause of action "conflicts directly with an ERISA cause of action." *Id.* at 700. The plaintiff in *Vartanian* was an employee/plan beneficiary who alleged common law misrepresentation arising from his employer's statements concerning whether an early retirement offer would be made, which materially impacted the beneficiary's decision as to the timing of his retirement. *Id.* at 698–99. The Court concluded that dismissal of the misrepresentation claim was appropriate under the circumstances because there would be no cause of action if there were no plan. *Id.* at 700 ("The alleged misrepresentations by Monsanto relate to the existence of the 1991 Plan and in order to prevail under a state common law claim for misrepresentation, Vartanian would undoubtedly have to plead, and the Court would have to find, that the 1991 Plan exists."). Subsequently, in *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790 (1st Cir.1995), the First Circuit Court of Appeals held that misrepresentation claims concerning the scope or existence of benefits are *per se* preempted because damages would be determined, in part, on the level of benefits at issue and computation of such benefits would necessarily require reference to the terms of the subject plan. *Id.* at 793–794. Next, in *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d

196 (1st Cir.1997), the Court of Appeals held that breach of contract and other state law claims against a health maintenance organization based on an allegedly wrongful denial of a request to fund a certain cancer treatment were preempted because they fell within ERISA's exclusive civil enforcement regime. *Id.* at 197–98. The following year, in *McMahon v. DEC*, 162 F.3d 28 (1st Cir.1998), the First Circuit addressed state law claims that depended for their success on the employee-plaintiff's ability to establish that she was eligible for certain benefits under the employer's plan. *Id.* at 38. The Court reasoned that the claims were preempted because the plaintiff would have to prove either that the plan improperly adjudicated her as ineligible for benefits, which directly concerned plan administration, or that she was qualified for benefits, which would require proof of the plan's specific terms.[17] *Id.* at 38–39.

Finally, for our purposes, the First Circuit considered in *Hampers v. W.R. Grace & Co.* whether ERISA "preempts a common law cause of action for lump sum contract damages where the alleged breach involves the failure of a former employer to enroll the plaintiff in an ERISA-regulated employee pension benefit plan." 202 F.3d at 45. The Court began by observing that the plaintiff's "common law breach of contract claim [was] not in 'conflict' with ERISA as ERISA contains neither substantive rules of contract construction, nor a general remedy for contract damages." *Id.* at 49. However, the plaintiff's contract claim nevertheless "alleged a cause of action under ERISA based on precisely the same conduct that underlies his state law contract claim," and further requested ERISA-specific remedies in the context of the contract claim, including damages partially

---

**17.** The Court did preserve for trial a contract claim related to the employer's ancillary promise to relocate the plaintiff. *McMahon,* 162 F.3d at 39.

computed by reference to the benefits at issue, and, lastly, sought to prove the contract breach by proving the terms of the subject plan. *Id.* at 52, 54. Under these circumstances, the Court concluded that ERISA's preemption provision applied because the contract claim was little more than an attempt to obtain an alternative remedy not provided by ERISA's exclusive civil enforcement regime based on allegations falling within that regime. *Id.* at 52–54.

### A. Vescom's negligence claim against American Heartland is preempted.

█ Vescom alleges as Count II of its Amended Complaint that American Heartland "was negligent in designing the Plan ... and in choosing Merrion and recommending Merrion ... as a reinsurer of the Plan, as well as in failing to provide Merrion with sufficient information to permit Merrion to assess claims made under the Plan and the reinsurance agreements." *Amended Complaint, Docket No. 8,* ¶ 21. The negligent design claim depends on the existence of the Plan for its success because Vescom must prove how the Plan was designed in order to prove that the Plan was negligently designed. Moreover,

it would be antithetical to ERISA preemption for a court to entertain a state law claim that seeks to impose liability based on the substantive content of an ERISA plan. For these reasons, this claim falls neatly within the preemption terrain outlined by First Circuit precedent, discussed above.

The second aspect of this claim concerns American Heartland's alleged failure to provide Merrion with sufficient information to pay claims. This aspect of the negligence claim is not pursued by Vescom in its memorandum and, to the extent it is pursued in the context of Vescom's contract claim, Vescom has conceded the preemption issue. I therefore recommend that the Court grant American Heartland summary judgment against Count II of the Amended Complaint.

### B. Vescom concedes that its contract claim against American Heartland is preempted.

Vescom alleges as Count III that American Heartland "has breached the [administrative] contracts by failing to properly administer claims made under the Plan." *Docket No. 8,* ¶ 24. Vescom now concedes that this claim is preempted,[18] *Mem. of*

---

18. Various federal courts have actually held that employers' claims against reinsurers, or excess insurers, for denial of reinsurance proceeds are *not* preempted by ERISA because they concern garden variety, state law insurance claims against non-plan fiduciaries. *See, e.g., Union Health Care, Inc. v. John Alden Life Ins. Co.,* 908 F.Supp. 429, 433–36 (S.D.Miss.1995) (reasoning that reinsurer is not a plan fiduciary, the reinsurance relationship is a standard commercial relationship that does not implicate any special ERISA concerns, ERISA would not otherwise afford any remedy for this simple contract dispute, and non-recognition of such contract claims would be deleterious to ERISA's goals because plan sponsors could no longer rely on reinsurance contracts for the fiscal stability of their plans). Likewise, these courts have also held that the employers' state law claims

against plan administrators for conduct causally connected to breaches by reinsurers are not preempted when the conduct at issue involves the administrators' performance of essentially perfunctory obligations connected to the reinsurance relationship, as opposed to discretionary functions performed in a fiduciary capacity. *See id.* at 435–36 (ruling that employer's claim against plan administrator for failure to timely notify reinsurer of excess claims was not preempted because it related solely to non-discretionary duties assumed by administrator as a consequence of the reinsurance contract). *Accord, Geweke Ford v. St. Joseph's Omni Preferred Care,* 130 F.3d 1355, 1359–60 (9th Cir.1997) (adopting rationale of *Union Health Care* Court); *Jefferson Parish Hosp. Serv. Dist. No. 2 v. Ruby Tuesday's Inc.,* 1998 U.S. Dist. LEXIS 767, *13–16, 1998 WL 24422, *4 (E.D.La. Jan.23, 1998) (ruling that

*Law in Opp., Docket No. 38*, at 3, and I therefore recommend that the court grant summary judgment against Count III of the Amended Complaint.

>   *C. Vescom concedes that its misrepresentation claim is preempted, in part; to the extent it does not so concede, the claim lacks sufficient evidentiary support.*

In Count IV, Vescom alleges that "American Heartland negligently or fraudulently misrepresented material facts ... both before and after the parties entered into the [administrative and reinsurance] contracts." *Docket No. 8*, ¶ 28. Vescom now concedes that "any claim against [American Heartland] for misrepresentations made *after* entering into the contracts is preempted." *Docket No. 38* at 4 n. 1. Vescom contends, however, that the misrepresentation claims are not preempted to the extent that they seek damages for conduct "occurring prior to the existence of the plan and prior to [American Heartland] becoming an ERISA fiduciary for the plan." *Id.* at 4. Vescom relies on *Stetson v. PFL Ins. Co.*, 16 F.Supp.2d 28 (D.Me.1998), in support of this proposition. American Heartland simplifies this potentially sticky preemption issue by conceding "that any alleged misrepresentations made

by [American Heartland] prior to [American Heartland] becoming plan administrator and fiduciary would not be preempted by ERISA." *Reply of Def., Docket No. 45*, at 1.

■■■ Maine's misrepresentation tort law entertains two alternative theories of relief: negligent misrepresentation and intentional misrepresentation (sometimes referred to as fraudulent misrepresentation). The negligent misrepresentation tort imposes liability on one who, "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions," provided that "he fails to exercise reasonable care or competence in obtaining or communicating the information" and the others are justified in relying on the information. *Chapman v. Rideout*, 568 A.2d 829, 830 (Me.1990). The tort of fraudulent misrepresentation requires much the same, requiring proof by clear and convincing evidence that the defendant (1) made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing plaintiff to act in reliance upon it, and (5) plaintiff justifiably relied upon the

employer's cross-claim against plan administrator for contractual indemnification under an administrative service agreement was not preempted where the administrator's negligent misrepresentation caused the non-fiduciary health care provider plaintiff to sue employer for failure to fund provider's claim for services rendered); *Capital Mercury Shirt Corp. v. Employers Reinsurance Corp.*, 749 F.Supp. 926, 928 (W.D.Ark.1990) (involving employers' claims against "stop-loss" insurer for failure to cover excess claims and against plan administrator for "providing inaccurate, misleading and incomplete information" to stop-loss insurer, which lead to non-payment of excess claims).

Vescom's contract claim shares the same trajectory as the claims found in the foregoing

cases. Vescom seeks contract damages against Merrion for defaulting on an insurance contract and asserts that American Heartland's breach of its own contractual obligations played a causal role in the underpayment of reinsurance claims by Merrion. According to the foregoing persuasive authorities, this alleged dereliction of duty does not implicate American Heartland's fiduciary duties or its fiduciary relationship to the Vescom Plan and its beneficiaries but rather those duties it contractually assumed in the Administrative Agreement with regard to the separate Reinsurance Agreement. Such a conclusion would be bolstered by the fact that American Heartland's duty to forward claims to Merrion was non-discretionary once it adjudicated the claims as covered.

representation as true and acted upon it to her damage. *Guiggey v. Bombardier,* 615 A.2d 1169, 1173 (Me.1992).

Vescom bases its misrepresentation claims on the following statements: (1) that Vescom's employees' health care would be covered for the specified rate; (2) that claims would be funded within three days, "which almost never happened"; and (3) that the 100% reinsurance feature of the plan was the equivalent of being fully insured, *i.e.,* that there was no risk to Vescom for payment of claims. *Docket No. 38* at 6. Additionally, Vescom argues (4) that American Heartland negligently misrepresented a material fact when it "recommend[ed] Merrion as the reinsurance carrier for Vescom's plan" because American Heartland had not sufficiently researched whether Merrion was suited to serve in that capacity. *Id.* Contrary to Vescom's contentions, sufficient material facts do not exist to support any of the foregoing arguments.

■ The first theory is not maintainable because there is no evidence that Vescom's employees' healthcare was not covered for the quoted rate during the first contract cycle. By the time Merrion began to default on the plan provisions, American Heartland was an ERISA fiduciary and any representations it may have then made about the fiscal integrity of the Vescom Plan would directly implicate its fiduciary duties, thereby preempting this state law tort theory. In any event, the record only supports a finding that American Heartland represented Vescom could obtain, among other services, 100% reinsurance from Merrion in exchange for the quoted monthly contribution. The fact that the reinsurer ultimately defaulted on the Reinsurance Agreement does not in itself make American Heartland's prior representation a falsehood.

■ The second theory is not maintainable because the representation refers to language in the Merrion–Vescom Reinsurance Agreement. Although American Heartland may have had a role in drafting the document, there is no evidence that it made any affirmative representation that Merrion would, in fact, pay every claim within 3 days of its submission. Merrion alone made this representation when it signed the Agreement. Nor has Vescom presented any evidence that American Heartland knew Merrion would not, in fact, comply with this contractual obligation.

■ The third theory is not maintainable because the statement of material fact on which Vescom relies is not supportive of the claim. Vescom offers only that when considering whether to sponsor a self-funded ERISA plan, "[i]t was Pam Treadwell's understanding based upon the documents and the information relayed to her by Mr. Murphy that the 100% reinsurance feature of [American Heartland's] proposal was the equivalent of being fully insured and that there was no risk to Vescom for payment of claims." *Docket No. 38* at 6 (relying for this theory on the statement contained in Docket No. 39, ¶ 34). Of course, what Ms. Treadwell's understanding may have been is not material to the misrepresentation claims. Vescom must support this theory with facts indicating precisely what false statement American Heartland made or what false information American Heartland gave with regard to the risks involved with 100% reinsurance. There is no suggestion that the written proposal American Heartland provided to Vescom, through Murphy, contained any material falsehoods. Nor is there any evidence of any other specific written or oral communication that was materially misleading.

■ Finally, the fourth theory also lacks evidentiary support. Although the record may permit the inference that American Heartland "recommended" that

Vescom obtain reinsurance from Merrion, there is no evidence to support a finding or inference that this recommendation contained a misstatement of any material fact. American Heartland did not represent that Merrion would not default on its reinsurance contract. There is no evidentiary support for a finding that American Heartland said anything other than, essentially, that Vescom might use Merrion for reinsurance. Despite its insistence and heartfelt belief that it was materially misled during the contract negotiation stage, Vescom simply fails to point to any specific language spoken or authored by anyone at American Heartland that was misrepresentative of any material fact. Nor has Vescom identified a single authority that would support the imposition of a duty on American Heartland to research or disclose facts pertaining to Merrion's assets or financial condition.

### 3. Summary judgment should not enter against Vescom on Count V.

■ With Count V, Vescom seeks damages for defamation based on alleged statements made by a member of American Heartland's staff to one of Vescom's employees. *Docket No. 8*, ¶ 31. According to Vescom, Randall Packard, one of its regional managers, telephoned American Heartland in July or August 1999 in an attempt to find out why some of his wife's medical bills had not been paid under the Plan. The American Heartland representative who took Mr. Packard's call told him that Vescom was self-insured and had not paid its bill and that American Heartland would not be processing the claims until Vescom paid. Mr. Packard understood that to mean that Vescom was at fault for the non-payment of his wife's medical bills. *Docket No. 39*, ¶ 62. In fact, Vescom was

in compliance with its agreement to submit monthly contributions to American Heartland; although Vescom's contribution were seldom timely, they were all made within the contract's applicable grace period. *Docket No. 39*, ¶ 17.

American Heartland argues that the defamation claim is preempted by ERISA simply because it is a claim between two existing ERISA "principals." *Docket No. 28* at 14. In its reply memorandum, American Heartland argues that the publication was, in any event, privileged and true. *Docket No. 45* at 3–4. Vescom counters that its defamation claim "is separate and distinct from its ERISA claims, does not depend on the terms of the plan, and seeks damages for harm done to Plaintiff's reputation, rather than unpaid benefits under the plan." *Docket No. 38* at 7.

In *Mackey v. Lanier Collection Agency & Serv., Inc.,* the Supreme Court described "the several types" of civil claims that may be brought against ERISA plans. 486 U.S. 825, 832–33, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The first kind are those claims that arise out of 29 U.S.C. § 1132, ERISA's own civil enforcement provision. *Id.* The second kind consist of "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," as well as actions to collect judgments, and may be pursued even though such claims may "obviously affect[ ] and involve[ ] ERISA plans and their trustees." *Id.* at 833, 108 S.Ct. 2182. In a footnote, the Supreme Court cited as exemplars three cases involving state law causes of action pursued in state forums. Notably, none of the plaintiffs in these cases were ERISA entities. *Id.* at n. 8, 108 S.Ct. 2182.[19]

---

19. *See Morris v. Local 804, Delivery & Warehouse Employees Health & Welfare Fund,* 116 Misc.2d 234, 455 N.Y.S.2d 517 (N.Y.City Civ.

Ct.1982) (involving suit by landlord against ERISA plan for unpaid rent); *Luxemburg v. Hotel & Rest. Employees & Bartenders Int'l*

The District Court for the Southern District of New York has recently addressed this issue. In *Suozzo v. Bergreen*, that court granted plaintiff's motion to remand his defamation suit to state court over defendant's objection that the suit was preempted by ERISA. 2002 U.S. Dist. LEXIS 11726, *55–56, 2002 WL 1402316, *20 (S.D.N.Y. June 27, 2002). The Court relied for its decision on the following factors: the plaintiff did not raise any challenges affecting his level of benefits under the plan; the allegedly tortious statements did not concern the plaintiff's benefits; the defendant was the plan's attorney rather than the plan; the plaintiff did not challenge the way the Plan was administered and did not rely for his claim on any ERISA provisions; and the alleged defamation was not prohibited by ERISA. *Id.*

Similarly, the District Court for the Western District of Virginia this year remanded a state law defamation claim that was premised on the defendant employer's publication that it was terminating the plaintiff for cause. *Grover v. Comdial Corp.*, 2002 U.S. Dist. LEXIS 9620, *14, 2002 WL 1066951, *4–5 (W.D.Va. May 23, 2002). This publication, in turn, caused the administrators of two ERISA plans sponsored by the employer to deny the plaintiff certain benefits under the plans. *Id.* The court reasoned that the claim did not sufficiently arise under ERISA because the claim concerned only whether the publication that plaintiff was terminated for cause was true and was pursued only against the employer, not against the plan. *Id.* 2002 U.S. Dist. LEXIS 9620, *14–16, 2002 WL 1066951, *5.

Likewise, in *Inverness Corp. v. McCullough*, the District Court for the District of Massachusetts remanded a slander action to state court where the plaintiffs were not "beneficiaries, participants, or fiduciaries of any ERISA plan," and sought damages for harm to their reputations rather than past, current, or future benefits from the plan. 1999 U.S. Dist. LEXIS 19557, *11–12, 1999 WL 1225231, *4 (D.Mass. February 24, 1999). In so ruling, the *Inverness* court followed a factually similar ruling from the Northern District of Illinois, *Grand Park Surgical Ctr. v. Inland Steel Co.*, in which a health care provider sued an employer for slanderous publications. 930 F.Supp. 1214, 1219 (N.D.Ill.1996).[20]

Contrary to these several decisions are *Jackson v. Kroch's & Brentano's, Inc.*, 1993 U.S. Dist. LEXIS 8965, 1993 WL 243295 (N.D.Ill. June 30, 1993) and *Thomas v. Telemecanique, Inc.*, 768 F.Supp. 503 (D.Md.1991). In *Jackson*, the Northern District of Illinois found that a defamation claim was preempted in a case where the plaintiff was a plan beneficiary and the defendants included plan trustees. In addition to the fact that both parties were ERISA entities, the *Jackson* Court concluded that the plaintiff's allegations of defamation were significantly intertwined

---

*Union Pension Fund*, 91 Misc.2d 930, 398 N.Y.S.2d 589 (N.Y.Sup.1977) (involving suit by attorney against ERISA plan for unpaid attorney fees); *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 341 S.E.2d 622 (1986) (involving libel suit by medical doctor against ERISA plan). ERISA preemption is found not to apply most commonly in cases where one of the parties is not an ERISA entity. *See Berlin City Ford v. Roberts Planning Group*, 864 F.Supp. 292, 295–96 (D.N.H.1994) (collecting cases). "The primary ERISA entities are the employer, the plan, the plan fiduciaries, and

the beneficiaries of the plan." *Stetson v. PFL Ins. Co.*, 16 F.Supp.2d 28, 33 (D.Me.1998).

**20.** *See also Strehl v. Case Corp.*, 1997 U.S. Dist. LEXIS 17681, *11–13, 1997 WL 695729, *4–5 (N.D.Ill. November 4, 1997) (involving care provider's defamation suit against plan administrator and company sponsor, which was not preempted because the plaintiff was not a plan participant and did not seek benefits, the claim did not depend on any obligations created by the plan and did not implicate a relationship among ERISA entities).

with the plan This was so because the publication he complained about concerned actions taken by the plaintiff in an effort to enforce his and fellow employees' ERISA rights, including an allegation that the defendants' statements were made in an effort "to influence employees and to paint a false picture regarding litigation from which they may benefit as Plan beneficiaries." 1993 U.S. Dist. LEXIS 8965 at *18–19, 1993 WL 243295 at *6 (internal quotation marks omitted). Based on these circumstances, the court found that a consideration of the defamation claim would necessarily involve an examination of the subject plan. *Id.* Similarly, in *Thomas,* the District of Maryland ruled that a plan beneficiary's defamation claim was ERISA preempted because the alleged defamatory statements "were solely about the plan." 768 F.Supp. at 506. Thus, because "[t]he entire issue [was] whether or not [the plaintiff] had a right to receive benefits, and whether her benefits were improperly terminated," the court ruled that the claim related to the subject ERISA plan.

Vescom's claim falls somewhere between the two groups of precedent discussed above. Like the plaintiffs in Suozzo, *Grover, Inverness, Grand Park Surgical Center*, and *Strehl*, Vescom is not attempting with this claim to obtain plan benefits or influence whether a beneficiary obtains benefits under its Plan. Nor is Vescom contending with its defamation claim that American Heartland breached any provisions of the Plan or any of its fiduciary duties under the Plan. However, unlike the plaintiffs *Suozzo et al.*, Vescom is an employer and ERISA entity, not a third party care provider, which means that its defamation claim presents a contest between two ERISA entities based on false statements one made in the course of plan administration concerning the reason why a claim was not timely paid under the Plan. Characterized in this fashion, the defamation claims seems a fair candidate

for preemption. Regardless of this fact, however, I am of the opinion that Vescom's defamation claim is not preempted for the following reasons:

(1) The defamation claim is a dispute between two commercial entities based on one party's statement that the other breached a commercial contract; such a claim is a "run-of-the-mill state law claim," *Mackey*, 486 U.S. at 833, 108 S.Ct. 2182, that would be actionable in any other context and affects the subject Plan "in too tenuous, remote, or peripheral a manner to warrant a finding that [it] 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

(2) The defamation claim does *not* concern a claim for benefits or raise an issue concerning the scope or existence of benefits. Nor does it contest in any fashion whether American Heartland properly carried out its fiduciary or discretionary duties under the Plan. Nor does it present facts that would in any other way fall within the ambit of ERISA's civil enforcement regime. In other words, it is not merely an attempt by Vescom to restyle an ERISA claim to obtain additional remedies beyond those available to it under ERISA, as was the case in *Jackson, Thomas,* and all of the First Circuit precedents discussed above.

(3) Recognition of the claim does not conflict with Congress's intent in creating ERISA because it in no way threatens the goal of having "plans and plan sponsors be subject to a uniform body of benefits law." *Travelers Ins. Co.*, 514 U.S. at 656, 115 S.Ct. 1671. The truth or falsity of the alleged defamatory statement does not hinge in any way on an evaluation of how American Heartland exercised a fiduciary duty governed by ERISA and, therefore, will not lead to the development of a multiplicity of differing state standards hinder-

ing the efficient administration of the Nation's employee benefit plans.

(4) The claim does not seek damages that are in any way measured by the terms of the Plan.

(5) The commercial relationship between an employer/plan sponsor and its third party administrator is different from the relationship between employers who self-administer their plans and the employees/beneficiaries who depend on such plans for benefits. As a third-party contract administrator, American Heartland owes *contractual* duties to Vescom the employer/sponsor, not fiduciary duties (which is why Vescom must pursue its ERISA claims as a "participant" or "fiduciary" and for the benefit of the Plan, rather than in its role as an employer). It is the fiduciary relationship that ERISA is designed to govern, for the benefit of the beneficiaries. This claim does not threaten that relationship.

(6) The existence of and terms of the Plan are not material to the elements of the defamation claim, but are merely background information in the same way that any contractual or commercial relationship might explain how it is that one party has come to make a publication concerning another party. To the extent that reference must be made to the terms of the Administrative Agreement, it is limited to establishing the amount of Vescom's monthly contribution obligation and the deadline for payment, two simple record facts. Given the way that the Vescom Plan was set up, American Heartland essentially stated that Vescom had not paid its reinsurance premium.

(7) Immunizing third-party plan administrators from defamation claims brought by employers/plan sponsors would not serve the best interest of plan beneficiaries because it creates an atmosphere that undermines the ability of beneficiaries to rely on the truthfulness of statements made by plan administrators.

For these several reasons, I believe that preemption of Vescom's defamation claim would extend ERISA preemption beyond what Congress intended.

With respect to the merits of this claim, American Heartland asserts a qualified privilege and the defense of truth for the first time in its reply brief; its initial brief raises *only* ERISA preemption. Although recognition of a qualified privilege under these circumstances is probably appropriate, *see* Restatement (Second) of Torts §§ 595–599, it would serve only to raise the standard that Vescom must meet at trial. As for the defense of truth, American Heartland did not present any facts in its Local Rule 56 statement to support a finding of truth. In my view, it would not be appropriate to enter summary judgment against this claim based on arguments raised in a reply brief, but not sufficiently briefed or supported by the movant's summary judgment filings. American Heartland has failed to put these matters in issue by tersely mentioning them for the first time in its reply memorandum. Accordingly, I recommend that American Heartland's motion for summary judgment be denied with regard to Count V.

**4. The summary judgment record cannot support either of the equitable theories advanced by Vescom against American Heartland.**

In Counts VI and VII, Vescom seeks equitable damages for restitution and unjust enrichment, respectively. American Heartland argues that these claims are also preempted by ERISA because they are "directed to American Heartland only in its capacity as plan administrator and fiduciary." *Docket No. 28* at 14. Vescom counters that the equitable claims are not

based on state law, but on "emerging federal common law" that is being developed for purposes of ERISA litigation, citing *State Street Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83 (1st Cir.2001). *Docket No. 38* at 9. American Heartland rejoins that such equitable remedies are not available where, as here, the parties' relationship is founded on a written agreement. *Docket No. 45* at 4–5. American Heartland relies, for its part, on *Luby v. Teamsters Health Welfare and Pension Funds*, 944 F.2d 1176 (3d Cir.1991) and *Ferry v. Mutual Life Ins. Co.*, 868 F.Supp. 764 (W.D.Pa.1994).

██ By characterizing Counts VI and VII as federal common law claims of the sort addressed in *State Street Bank and Trust*, Vescom reveals that Counts VI and VII are pursued by Vescom in its role as employer, rather than in its role as plan fiduciary. 240 F.3d at 88–89. Employers are permitted to pursue such equitable claims in the ERISA environment, but they may not obtain any remedy that would result in underfunding the subject ERISA plan. *See, e.g., Luby*, 944 F.2d at 1186 ("We have held that federal common-law restitution is available to employers to recover mistakenly paid pension fund contributions, unless restitution would result in underfunding of the ERISA plan."); 29 U.S.C. § 1103(c) (entitled, "Assets of plan not to inure to benefit of employer"); *Kwatcher v. Mass. Serv. Employees Pension Fund*, 879 F.2d 957, 960 (1st Cir.1989) (discussing ERISA's "anti-inurement" provision). Additionally, any equitable remedy must not "override a contractual provision of an ERISA plan." *State Street Bank and Trust*, 240 F.3d at 88–89 (quoting *Luby*, 944 F.2d at 1186). Unlike the standard ERISA claim, these equitable claims, in theory, could return funds to Vescom's corporate coffers. Unfortunately for Vescom, they are not well conceived.

*a. The restitution claim is not supported by the summary judgment record.*

██ American Heartland contends that equitable restitution is not an appropriate remedy where a written contract governs the subject matter of the dispute. *Docket No. 45* at 4–5. According to the Supreme Court:

"[A] plaintiff [can] seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Restatement of Restitution, *supra*, § 215, Comment *a*, at 867.

*Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213–14, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (citing, *inter alios*, Restatement of Restitution §§ 160, 215 (1936)) (internal quotation marks, brackets and citation omitted). The facts of Vescom's case do not exactly fit into the equitable restitution framework. The primary problem with Vescom's restitution claim is that there is no summary judgment statement of fact indicating that identifiable funds belonging to Vescom are clearly traceable "to particular funds or property" currently in American Heartland's possession. The only related factual

presentation, which is not favorable to Vescom, is American Heartland's statement of fact that the amount of funds it paid out on Merrion's behalf for Vescom claims exceeded the amount of Vescom's monthly contributions during the period from July 1999 until November 1999. If this statement were to support any inference, it would have to be that "the property sought to be recovered or its proceeds have been dissipated so that no product remains." *Knudson,* 534 U.S. at 213, 122 S.Ct. 708. Moreover, there is no factual statement indicating that Vescom paid any of the excess claims with its own funds, let alone that it paid such claims by transferring funds into American Heartland's possession. Accordingly, summary judgment should enter against Count VI.

b. *The unjust enrichment claim is not supported by the summary judgment record.*

▮▮▮ American Heartland contends that unjust enrichment is not an appropriate remedy where the litigants are party to a written contract. *Docket No. 45* at 4–5. There is some authority for this proposition. Because an unjust enrichment claim asks the court to construct a remedy where no contract exists, it is an inapt remedy for parties who have already voluntarily entered into a written contract governing the very relationship at issue. *Luce v. Corinna Seed Potato Farms,* 125 Me. 386, 387, 134 A. 198, 199 (1926); *see also Paffhausen v. Balano,* 1998 ME 47, ¶ 6, 708 A.2d 269, 271 ("Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds

of fairness and justice, the law compels performance of a legal and moral duty to pay, and the damages analysis is based on principles of equity, not contract.") (quotation marks and citation omitted). Exactly what the "emerging" federal common law of unjust enrichment will be–as it relates to employer claims against plan administrators–is anything but obvious.

▮▮▮ Beyond this threshold concern, it is difficult to understand how American Heartland was unjustly enriched when Vescom funded certain excess benefits that *Merrion* had assumed liability for. After all, American Heartland did not assume an obligation under the Administrative Agreement to fund benefits. Given the absence of a firm legal footing for this claim and Vescom's failure to articulate any principled basis why the Court should consider American Heartland to have been unjustly enriched,[21] I recommend that the Court enter summary judgment against Count VII.

5. **The remaining ERISA fiduciary duty claim (Count I) should not be remanded for arbitration.**

▮▮▮ American Heartland asks that in the event the Court concludes that only the ERISA fiduciary claims remain, Vescom be required to arbitrate its claims as provided in the Administrative Agreement. *Docket No. 45* at 7. According to American Heartland, federal law requires that the arbitration clause be honored. American Heartland explains this 11th hour request as follows: "While it might not have been cost effective earlier to litigate part of Plaintiff's claims, and arbitrate others, it is

21. In Count III of its Amended Complaint, Vescom seeks the legal remedy of consequential damages from American Heartland and Merrion for breach of contract. *Amended Complaint,* ¶¶ 24, 25 & 26. Whether the emerging ERISA-federal common law would recognize a comparable *equitable* remedy un-

der these circumstances, such as through a claim for equitable indemnity, is not placed in issue by the pleadings. *See, e.g., Daigle Commercial Group, Inc. v. St. Laurent,* 1999 ME 107, ¶ 22, 734 A.2d 667, 675–76; *Emery v. Hussey Seating Co.,* 697 A.2d 1284, 1287–88 (Me.1997).

now clear that the only even arguably viable claims ... are those which arise out of the Administrative Services Contract." *Id.*[22]

Although American Heartland's Answer raised the arbitration clause as an affirmative defense, American Heartland's Summary Judgment Motion, *Docket No. 28,* does not request that the dispute be arbitrated. Local Rule 7 "strictly confines" a party filing a reply memorandum "to replying to new matter raised in the objection or opposing memorandum." American Heartland's timing is further flawed insofar as the Court's docket now contains in excess of 50 entries and the Scheduling Order's ready for trial date is six months gone. Under these circumstances, American Heartland has "by engaging in litigation, implicitly waive[d] its contractual right to arbitrate." *Navieros Inter–Americanos, S.A. v. M/V Vasilia Express,* 120 F.3d 304, 316 (1st Cir.1997).

### 6. Summary judgment should enter against American Heartland's Third–Party Complaint.

In its Third Party Complaint, American Heartland seeks indemnification or contribution from Rodney Murphy and Murphy & Associates, Inc., "to the extent that Vescom is awarded judgment against [American Heartland] based on wrongful advice regarding placement with Merrion." *Third Party Complaint, Docket No. 15,* ¶¶ 12, 14. Should the Court agree with my recommendation that summary judgment enter against Vescom's "wrongful advice" claims, then there will no longer be any basis for the Third Party Complaint and it, too, should be foreclosed.

**22.** American Heartland's request necessarily prompted Vescom to file a Motion for Leave to File a Surreply, *Docket No. 49,* which I **GRANT**.

## ORDERS AND RECOMMENDATIONS

Based on the foregoing analysis, the Clerk is instructed to enter the following orders[23] on the docket.

Vescom's Motion to Strike the Affidavit of Jack H.M. Ferguson, *Docket No. 41* is **DENIED;**

American Heartland's Motion for Leave to Amend [its] Motion for Summary Judgment and Brief in Support, *Docket No. 43* is **DENIED;**

Vescom's Motion to Strike the Affidavits of Edwin W. Ehler, *Docket No. 48* is **DENIED;**

Vescom's Motion for Leave to File a Surreply Memorandum, *Docket No. 49* is **GRANTED;**

Vescom's Motion to Have Plaintiff's Statement of Additional Material Facts Deemed Admitted, *Docket No. 50* is **STRICKEN.**

### SO ORDERED.

In addition, for the reasons set forth herein, I **RECOMMEND** that the Court **GRANT–IN–PART** and **DENY–IN–PART** American Heartland's Motion for Summary Judgment, *Docket No. 28,* as follows:

**DENY** the motion with respect to Vescom's ERISA claim, Count I, and its defamation claim, Count V; and

**GRANT** the motion with respect to Vescom's remaining common law claims, Counts II, III, IV, VI an VII.

I further **RECOMMEND** that the Court **DENY** American Heartland's request that the case be referred for arbitration.

**23.** No order is entered in connection with Docket No. 51, which contains American Heartland's "corrected" reply statement of material facts. This filing is not accompanied by either a motion or a memorandum and, therefore, does not comply with Local Rule 7.

973

Finally, with regard to the Motion for Summary Judgment filed by Third Party Defendants Rodney Murphy and Murphy & Associates, Inc., *Docket No. 24,* I **RECOMMEND** that the Court **GRANT** the Motion.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

Jan. 17, 2003.